

1  Marjorie E. Motooka, State Bar No. 136678
   mem@fidonemotooka.com
2  Gary P. Fidone, State Bar No. 61109
   gpf@fidonemotooka.com
3  FIDONE & MOTOOKA, LLP
   301 N. Lake Avenue, Suite 1000A
4  Pasadena, California 91101-5126
   Tel: (626) 356-0100 • Fax: (626) 356-0101
5

6  Attorneys for Defendants,
   MILLER & DESATNIK MANAGEMENT CO., INC.;
7  CHARLES A. DAILEY and CAROL P. DAILEY

8



FILED
CLERK, U.S. DISTRICT COURT

MAY 2 8 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

9             UNITED STATES DISTRICT COURT

10   CENTRAL DISTRICT OF CALIFORNIA; WESTERN DIVISION

11

CV13- 3784 MWF (JEMx)



FIDONE & MOTOOKA, LLP
301 N. LAKE AVENUE, SUITE 1000A
PASADENA, CALIFORNIA 91101-5126
TELEPHONE (626) 356-0100

12  KRISTOPHER D. BAGLEY, an
    individual, KYLE L. BAGLEY, an
13  individual, and KEIRA V. BAGLEY, a
    minor, by and through her Guardian ad
14  Litem, KYLE L. BAGLEY,

15            Plaintiffs,

16  v.

17  MILLER AND DESATNIK
    MANAGEMENT, CO., INC., a California
18  Corporation; CHARLES A. DAILEY, an
    individual; CAROL P. DAILEY, an
19  individual; and DOES 1 to 20, Inclusive,

20

21            Defendants.

CASE NO.:

**NOTICE OF REMOVAL OF
ACTION UNDER 28 U.S.C.
SECTION 1441(b)**

Action Filed:    04/05/13
Trial Date:      None

22

23        PLEASE TAKE NOTICE THAT Defendants, MILLER & DESATNIK

24  MANAGEMENT CO., INC.; CHARLES A. DAILEY and CAROL P. DAILEY

25  hereby remove to this Court the state court action described below.

26        1.  On or about April 5, 2013, Plaintiffs KRISTOPHER D. BAGLEY, an

27  individual, KYLE L. BAGLEY, an individual, and KEIRA V. BAGLEY, a minor, by

28  and through her Guardian ad Litem, KYLE L. BAGLEY, commenced an action Los

1 | Angeles Superior Court, State of California, entitled Bagley v. Miller and Desatnik

2 | Management Co., Inc. et al., Case No. SC120509

3 |     2.  Defendants were served with the summons and complaint on May 28, 2013.

4 | Pursuant to 28 U.S.C. Section 1446(b), this notice has been timely filed.  A copy of

5 | the Complaint and Proofs of Service in the state court action are attached hereto as

6 | Exhibit "1."

7 |     3.  This action is a civil action of which this Court has original jurisdiction

8 | under 28 USC Section 1331, and is one which may be removed to this Court by

9 | defendants pursuant to the provisions of 28 USC Section 1441(b) in that it arises

10 | under a federal statute namely the Federal Fair Housing Amendment Act 42 U.S.C.

11 | Sections 3604 and 3617.

12 |     WHEREFORE Defendants, MILLER & DESATNIK MANAGEMENT CO.,

13 | INC.; CHARLES A. DAILEY and CAROL P. DAILEY pray that this action be

14 | removed to the United States District Court for the Central District of California.

16 | DATED:  May 28, 2013        FIDONE & MOTOOKA, LLP

18 | By: _Marjorie E. Motooka (signature)_

19 |     MARJORIE E. MOTOOK
    Attorneys for Defendants,
    MILLER & DESATNIK
    MANAGEMENT CO., INC.; CHARLES
    A. DAILEY and CAROL P. DAILEY

*Left margin (vertical):* FIDONE & MOTOOKA, LLP
301 N. LAKE AVENUE, SUITE 1000A
PASADENA, CALIFORNIA  91101-5126
TELEPHONE (626) 356-0100

1  MARC S. SHAPIRO, SBN 155791
   JONATHAN P. CYR, SBN 260826
2  HANGER, STEINBERG, SHAPIRO & ASH
   A Law Corporation
3  21031 Ventura Blvd., Suite 800
   Woodland Hills, CA 91364-6512
4  (818)226-1222 Fax (818)226-1215

5  Attorneys for Plaintiffs
   KRISTOPHER D. BAGLEY, KYLE L. BAGLEY,
6  and KEIRA V. BAGLEY, a minor, by and through
   her *Guardian ad Litem*, KYLE L. BAGLEY

7

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 05 2013

John A. Clarke, Executive Officer/Clerk

By Cynthia Estrada, Deputy

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF LOS ANGELES

10                                          SC120509

11 KRISTOPHER D. BAGLEY, an individual,      CASE NO. SC_____
   KYLE L. BAGLEY, an individual, and KEIRA  (Assigned for all purposes to
12 V. BAGLEY, a minor, by and through her    Judge, Dept. __)
   Guardian ad Litem, KYLE L. BAGLEY;
13                                           COMPLAINT FOR DAMAGES,
              Plaintiffs,                    INJUNCTIVE RELIEF, AND
14                                           DECLARATORY RELIEF
   vs.
15
   MILLER AND DESATNIK MANAGEMENT
16 CO., INC., a California Corporation;
   CHARLES A. DAILEY, an individual;
17 CAROL P. DAILEY, an individual; and DOES
   1 to 20, Inclusive,
18
              Defendants.
19

20

21         COME NOW PLAINTIFFS KRISTOPHER D. BAGLEY, KYLE L. BAGLEY, and

22 KEIRA V. BAGLEY, a minor, by and through her *Guardian ad Litem*, KYLE L. BAGLEY,

23 and hereby allege as follows:

24                        GENERAL ALLEGATIONS

25         1.    Plaintiffs KRISTOPHER BAGLEY and KYLE BAGLEY (hereinafter

26 "Plaintiffs") were at all times residents of the State of California, County of Los Angeles.

27         2.    Plaintiff KEIRA V. BAGLEY is the minor child of Plaintiffs KRISTOPHER

28 BAGLEY and KYLE BAGLEY, and is a resident of the State of California, County of Los

                                       1

                                       3

                                  Exhibit 1

1   Angeles.

2       3.      On information and belief, Defendant MILLER AND DESATNIK

3   MANAGEMENT CO., INC., (hereinafter referred to as "MILLER") is now, and at all material

4   times was, an incorporated entity organized and existing under the laws of the state of

5   California with its principal place of business in the County of Los Angeles.

6       4.      On information and belief, Defendants CHARLES A. DAILEY (hereinafter

7   "CHARLES DAILEY" and CAROL P. DAILEY (hereinafter "THE DAILEYS") are now, and

8   at all material times were, individuals residing in the State of California, County of Los

9   Angeles.

10      5.      On information and belief, Defendants THE DAILEYS own the property

11  located at 4065-4069 Lafayette Place in Culver City, an incorporated city within the County of

12  Los Angeles, State of California, bearing Assessor's Parcel Number 4207-008-026 (hereinafter

13  referred to as "the Subject Property"). THE DAILEYS have owned the Subject Property since

14  approximately January 2010.

15      6.      On information and belief, Defendant MILLER presently manages and

16  maintains the Subject Property and has since approximately January 2010.

17      7.      At all times, Defendants and each of them have exercised real or apparent

18  authority regarding the Property and have been responsible for maintaining the property in a

19  lawful, habitable condition.

20      8.      Plaintiffs are ignorant of the true names and/or capacities, whether individual,

21  corporate, associate or otherwise, of Defendants DOES 1 through 50, inclusive, and therefore

22  Plaintiffs sue said Defendants by such fictitious names. Plaintiffs are informed and believe and

23  thereupon allege that each of the Defendants fictitiously named herein as a DOE is legally

24  responsible, negligently or in some other actionable manner, for the events and occurrences

25  hereinafter referred to, and thereby proximately and legally caused the injuries and damages to

26  Plaintiffs as hereinafter alleged. Plaintiffs will ask leave of court to amend this Complaint to

27  insert the true names and/or capacities to insert the true names of such fictitiously named

28  Defendants when the same have been ascertained.

9.    At all times relevant, each of the Defendants and DOES was the agent, employee, and/or representative of every other Defendant and DOES, and in doing the things hereinafter alleged, was acting within the course and scope of such agency, service, and/or representation, and directed, aided and abetted, authorized, or ratified each and every act and conduct hereinafter alleged.

10.    Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant, whether acting individually or jointly and severally.

11.    On or about November 20, 2008, Plaintiffs entered into a residential lease agreement to rent an apartment at the Subject Property at the rate of $1,720.00 per month, at the address commonly referred to as 4067 Lafayette Place, Los Angeles, CA 90232. At all times during their tenancy, Plaintiffs have timely paid rent.  Attached as Exhibit "A" is a true and correct copy of the lease agreement. The parties to the agreement were Plaintiffs and Leslie Thomsen, THE DAILEYS' predecessor in interest. The lease permits any party suing thereunder to recover reasonable attorney's fees. The rental term commenced December 1, 2008, at which time Plaintiffs moved to the Subject Property and have lived there ever since. Plaintiffs' minor child, Plaintiff KEIRA V. BAGLEY was born in December 2011 and has resided at the property since her birth.

12.    During Plaintiffs' tenancy at the Subject Property and while Defendants owned and/or operated and/or managed it, the Property was unsafe, unsanitary, unhealthy, uninhabitable, untenantable, in a substandard state of repair, and in gross violation of building, health and safety laws. Relevant laws that Defendants violated by renting the Subject Property to Plaintiffs include the habitability laws and standards contained in the California Civil Code, California Health and Safety Code, Los Angeles Rent Stabilization Ordinance, and the pertinent other regulations and laws of the City and County of Los Angeles regarding landlord obligations. The conditions of the Subject Property and Defendants' actions and/or omissions concerning said conditions were also a breach of the written residential lease agreement

1   governing the terms of Plaintiffs' tenancy.

2       13.   In May 2009, a pipe burst under Plaintiffs' sink causing damage to Plaintiffs'

3   unit.

4       14.   In June 2009, Plaintiffs advised THE DAILEYS' predecessor in interest that the

5   washing machine located in the unit above theirs was leaking into their apartment, that water

6   likely damaged the walls, and that a musty smell was noted under Plaintiffs' sink. The

7   landlord's handyman inspected, but no repairs were made to the sink or walls following this

8   leak.

9       15.   In or around January 2010, THE DAILEYS purchased the Subject Property and

10   MILLER began managing the property as property manager.

11       16.   On January 25, 2010, Plaintiffs sent a letter to MILLER advising that the floor

12   heater in their unit had not worked for the duration of their tenancy, inquiring as to repairs for

13   same. Defendants never responded to that letter.

14       17.   In fall 2010, Plaintiff KRISTOPHER BAGLEY verbally advised CHARLES

15   DAILEY of the lack of heat while CHARLES DAILEY, a licensed HVAC contractor, was

16   present at the property. A few days later, Plaintiffs arrived home to find a handwritten note on

17   their door indicating someone had cleaned the heater.

18       18.   On December 4, 2010, Plaintiffs again sent a letter to MILLER, advising

19   MILLER, among other issues, of the continued lack of heat at the property and requesting

20   prompt repair of same.

21       19.   On January 26, 2011, MILLER responded in writing, advising Plaintiffs that

22   they had no record of complaints from Plaintiffs on their maintenance line.  Addressing the

23   heat, MILLER advised Plaintiffs to "call the gas company."

24       20.   Between November 2011 and May 2012, the tenant residing in the unit above

25   Plaintiffs' unit continuously and constantly hosted loud and disruptive parties that involved

26   illicit drug use and prostitution. The Culver City Police Department responded numerous times

27   to the tenants' complaints. Plaintiffs and the other tenants begged Defendants for months to

28   abate the nuisance that threatened their quiet enjoyment and safety. Defendants did nothing.

1   Plaintiffs requested dead bolts and window locks as is required by law and to protect

2   themselves and their infant daughter; Defendants refused to provide these safety measures.

3   When CHARLES DAILEY was informed, he said he had no interest in reviewing the evidence

4   or in dealing with the nuisance. Finally, in June 2012, Defendants evicted the tenant.

5   Suspicious individuals who had frequented the tenant's parties continued to visit the property.

6        21.   Beginning in or around January 2011, and with increasing frequency throughout

7   2012, CHARLES DAILEY began coming onto the property in the early morning hours to

8   harass and spy on Plaintiffs and the other tenants. His constant behavior of being present on

9   premises while steadily watching Plaintiffs and the other tenants interfered with Plaintiffs'

10  quiet enjoyment of the property and amounted to harassment.

11       22.   On or about April 29, 2012, a water leak originating in the unit above Plaintiffs'

12  unit caused water to pour into Plaintiffs' unit, causing damage. Plaintiffs called MILLER, but

13  the "emergency" plumber took hours to arrive. Plaintiffs advised MILLER of same and

14  requested mold testing be conducted, as water leaks in the unit were a recurring issue. To date,

15  the damage caused by this water leak has not been repaired.

16       23.   In June 2012, as a means of "doing something nice for [Plaintiffs] for putting up

17  with [the tenant's nuisance]" referenced in paragraph 20, CHARLES DAILEY asked for a list

18  of requested repairs. Plaintiffs provided a list of repairs which CHARLES DAILEY refused to

19  complete, including installation of window locks, repair of a broken bathroom window,

20  installation of deadbolts, repair of crumbling stone at the back door, plumbing repair,

21  replacement of torn window screens, replacement and/or repair of non-functioning and

22  deteriorating heaters, installation of a second fan, and provision of adequate lighting in the

23  interior fixtures – each of which is required under California law.

24       24.   In July 2012, Defendant CHARLES DAILEY entered Plaintiffs' private

25  backyard and began to enter Plaintiffs' unit while Plaintiff KYLE L. BAGLEY was nursing her

26  infant child. CHARLES DAILEY had provided neither statutory notice nor notice of any kind

27  of his intent to enter, nor did he provide a reason for his entry when he arrived. After this

28  occurrence, Plaintiffs installed a locking mechanism on the gate to their private back yard.

25.   In July 2012, CHARLES DAILEY, providing neither statutory notice nor notice of any kind, nor requesting Plaintiffs' consent, visited the property while Plaintiffs were out of town, demanding that another tenant provide keys to Plaintiffs' unit so that he could enter. Plaintiffs are informed and believe that CHARLES DAILEY and/or MILLER frequently entered their and other units without providing requisite notice.

26.   On July 26, 2012, DAILEY and/or MILLER placed locks on all outside faucets, including the faucet located in Plaintiffs' exclusive-use rear patio and yard. This lockout prevented Plaintiffs from maintaining the vegetation in their yard which they had planted at their own expense and which was Plaintiffs' requirement to maintain. Additionally, as the unit lacked working smoke detectors, the locks further posed a safety risk to Plaintiffs in the event of a fire.

27.   On September 21, 2012, Defendants sent all tenants, including Plaintiffs, a letter prohibiting car washes at the Subject Property. Accompanying the letter were "House Rules," including the following: "Guardians must supervise their charges at all times. There is no play area designated on the premises." Attached as Exhibit "B" is a true and correct copy of the House Rules. This "Supervision Rule" relayed an unlawful preference for families without children and a discriminatory restriction based upon age and familial status in violation of federal and California fair housing laws. Plaintiffs advised MILLER of the need to rescind the rules.

28.   On October 11, 2012, Defendant CHARLES DAILEY again entered Plaintiffs' exclusive-use backyard through their locked gate, without consent and without providing notice. Defendant installed another lock on the hose bib, preventing Plaintiffs from maintaining their vegetation.

29.   On October 20, 2012, Plaintiffs sent a letter to MILLER requesting that Defendant repair the conditions previously listed in the June 2012 request within twenty-one days. This letter also chronicled CHARLES DAILEY'S pattern of harassment, including his constant presence at the property, peeking into windows, fiddling with Plaintiffs' and other tenants' locks and moving items around. The letter further requested that Defendants

1   immediately remove the familial status/age-based use restriction contained in the September

2   21, 2012 house rules. Elisa Herrera, MILLER'S property supervisor, later responded that the

3   Supervision Rule was MILLER'S "policy," sent out to every tenant at all of their properties.

4   (See ¶ 35).

5       30.     On October 26, 2012, MILLER'S property supervisor, Ms. Herrera visited

6   Plaintiffs' unit to inspect the above conditions. Herrera promised to make all the requested

7   repairs, acknowledging that Defendant CHARLES DAILEY was difficult and that she had

8   problems with him as well.

9       31.     On November 4, 2012, Plaintiffs emailed Herrera requesting a status update as

10  no further contact had been made by Defendants. This email chronicled CHARLES DAILEY'S

11  then constant and continuing arrival at the property every day, numerous times per day,

12  watching the tenants. Two days later, Herrera responded with another delay.

13      32.     On November 6, 2012, Defendant CHARLES DAILEY arrived at the property

14  and began banging on Plaintiffs' fence, unplugged Plaintiffs' extension cord for their backyard

15  lights from the main power source at the building, and threw the extension cord across the

16  fence into Plaintiffs' yard. After Plaintiff KRISTOPHER BAGLEY plugged the extension

17  cord back in, Defendant CHARLES DAILEY returned and did the same thing a second time.

18      33.     On November 8, 2012, Plaintiffs filed an online complaint with the Culver City

19  Department of Building and Safety regarding the numerous defective and substandard

20  conditions referenced above, specifically the continued lack of heat, defective heater,

21  inoperable smoke alarms, defective windows and window screens, and missing deadbolts and

22  window locks.

23      34.     On November 8, 2012, Plaintiffs sent an email to MILLER advising that the

24  retaliation from Defendant CHARLES DAILEY had escalated, seeking MILLER'S assistance.

25  Plaintiffs further requested an update regarding the needed repairs, specifically those that posed

26  the most urgent as safety hazards to Plaintiffs' infant daughter. Plaintiffs again asked about the

27  House Rules.

28  ///

35.   The same day, Herrera responded that the "House Rules" were MILLER's policy, sent to all tenants at the commencement of MILLER's management of the property. Herrera advised that MILLER was not obligated to provide new heaters or deadbolts for the property. Herrera did advise MILLER would replace the windows and that she was waiting on dates from a contractor.

36.   On November 10, 2012, Plaintiffs wrote MILLER advising that the statements regarding the House Rules, deadbolts and heater were legally incorrect, and that the issue regarding the front door screen and locks on the faucets was a mischaracterization of Plaintiff KYLE BAGLEY's conservation with Elisa Herrera. Plaintiffs further advised that Defendants had not addressed the insect infestation, torn window screens, missing locks, inoperable smoke alarms, and crumbling stone addressed in Plaintiffs' October 20th letter.   Finally, Plaintiffs provided a timeline for their availability to have new windows installed, to avoid Defendants having to pay relocation expenses.

37.   On November 15, 2012, Herrera acknowledged her promise to send out new House Rules, thanking Plaintiffs for informing her of the illegality of the age-based restriction. However, MILLER did not rescind or revise the house rules until February 27, 2013. (See ¶39).

38.   On December 6, 2012, Plaintiffs again contacted Herrera asking for a status update regarding the window repairs. Herrera responded with another delay.

39.   On December 11, 2012, Plaintiffs emailed Herrera requesting an update regarding the windows. No response was provided.

40.   On January 9, 2013, representatives of the Culver City Department of Building and Safety inspected the property and asked for MILLER'S contact information, which Plaintiffs provided. On January 23, 2013, inspector Carlos Lugo notified Plaintiffs that he had been calling MILLER and leaving several voicemails, but that his calls were unreturned. Mr. Lugo opined that he could not understand why Defendants had not made the repairs.

///

///

41.    On January 31, 2013 at approximately 5:30 p.m., the water heater in the unit above Plaintiffs' unit exploded, flooding both units and causing extensive damage to Plaintiffs' unit and personal property. Another tenant at the property contacted CHARLES DAILEY immediately, who refused to investigate or visit the property. Plaintiffs contacted MILLER'S emergency response line, but were forced to wait until 9:00 p.m. for Serv-Pro to arrive to begin cleanup. Plaintiffs advised MILLER that evening by email as to the nature and extent of the damage (in particular, the unit's continued lack of heat and then, electricity), requesting assistance. Plaintiffs again sought redress of the defective conditions that had persisted for months, requesting that Defendant respond to the city inspector's inquiries, and again requesting rescission of the Supervision Rule in the House Rules. Plaintiffs again requested mold testing as a result of the constant water leaks from the above unit.

42.    The next day, February 1, 2013, Culver City Department of Building and Safety inspector Carlos Lugo visited the property and confirmed that the windows required replacement. Herrera also came and advised Plaintiffs to vacate temporarily, promising to make all repairs, test the property for mold, and install new windows.

43.    As a result of the January 31, 2013 flood, Plaintiffs were displaced from February 1 through February 9 due to the damage to their unit and the related cleanup. They relocated with their infant daughter and dog to a nearby hotel until the repairs were completed. Because their hotel did not have a kitchen, Plaintiffs requested reimbursement for food. MILLER denied their request for reimbursement of food and lodging. Plaintiffs' documented out-of-pocket relocation expenses, including food, were $6,855.07.

44.    On February 9, 2013, upon being advised that Serv-Pro had substantially completed cleaning the most recent water intrusion, Plaintiffs were told they could return to their home. Plaintiffs arrived home to find that their unit still lacked heat. The outside high temperature during mid-day was only 48 degrees. When Plaintiffs called MILLER, they were advised that emergency heating services are not provided on weekends and that Plaintiffs would have to wait until Monday for any repair, despite giving Defendants notice of the lack of heat nine days prior. Plaintiffs were told by MILLER to "call the gas company" and "buy a

9

COMPLAINT

1   space heater." Plaintiffs thereafter filed a complaint with Los Angeles County Department of

2   Public Health.

3       45.    On February 13, 2013, Los Angeles County Department of Public Health issued

4   a notice to repair the violations found during its inspection, imposing a compliance date of

5   March 6, 2013. The compliance date passed without any repairs being completed by

6   Defendants. Attached as Exhibit "C" is a true and correct copy of the Health Department's

7   report.

8       46.    On February 21, 2013, Plaintiffs wrote MILLER, again requesting mold testing,

9   asking for an update on when the windows would be replaced, when the gap in the ceiling

10   would be repaired, asking for a revised copy of the House Rules, and advising MILLER that,

11   despite calls to the maintenance line, the kitchen baseboards which were removed as a result of

12   the January 31, 2013 water leak had yet to be replaced. As Plaintiff had advised MILLER by

13   telephone, the missing baseboards left exposed nails around the entirety of the kitchen and

14   laundry room, creating a danger to Plaintiffs' infant daughter.

15       47.    On February 25, 2013, MILLER served Plaintiffs with a 60-day eviction notice,

16   requiring them to leave the unit no later than May 1, 2013 under threat of an unlawful detainer

17   proceeding. Attached as Exhibit "D" is a true and correct copy of this notice.

18       48.    On February 27, 2013, two days after serving Plaintiffs with the eviction notice,

19   MILLER issued a revised set of House Rules omitting the Supervision Rule. On that same date,

20   an attorney for MILLER confirmed in writing that Plaintiffs were being evicted, that MILLER

21   would be unwilling to re-rent to Plaintiffs, and that should Plaintiffs reapply, their rent would

22   be higher to reflect "loss of rent during construction and the cost of the work." Attached as

23   Exhibit "E" is a true and correct copy of this letter.

24       49.    Despite Defendants' promises to do so, they never tested the property for mold.

25   On March 18, 2013, Plaintiffs commissioned a mold test of their apartment at their own

26   expense. The results confirmed Plaintiffs' fears that significant levels of *Stachybotrys*,

27   infamously known for its toxicity and commonly referred to as "black mold," were located

28   within the walls and ceiling of their kitchen/laundry room. Airborne levels of this mold genus

and others were located throughout the unit. Plaintiffs advised Defendants immediately of the presence of mold and need for remediation.  To date, Defendants have not responded or conducted remediation.

50.    Throughout the course of their tenancy, Plaintiffs have paid approximately $90,545.70 in rent. Approximately $66,465.70 of this amount has been paid to Defendants since January 2010.

51.    As a direct, legal, and proximate result of Defendants' actions, and each of them, Plaintiffs suffered loss of the value of their leasehold equal to the rental payments due and paid during said leasehold, or in an amount to be proven at time of trial.

52.    Further, as a direct, legal, and proximate result of Defendants' actions, and each of them, Plaintiffs suffered loss of the value of their personal property and/or their loss of use, in an amount to be proven at time of trial but in no event less than $6,855.07 representing their temporary relocation costs following the January 31, 2013 water intrusion.

53.    Further, as a direct, legal, and proximate result of Defendants' actions, and each of them, Plaintiffs were evicted from their home as a means of retaliation exacted upon them by Defendants for Plaintiffs' advising them of defective conditions, requesting repair for said conditions, contacting governmental agencies when the conditions were permitted to persist without abatement and requesting rescission of the Supervision Rule in the House Rules. As a result, Plaintiffs were forced to seek out alternative living arrangements in an upmarket, at great expense to them and representing a loss of amenities. These losses are in an amount to be proven at time of trial.

54.    Further, as a direct, legal, and proximate result of Defendants' actions, and each of them, Plaintiffs suffered and continue to suffer illness, medical expenses, severe mental stress, severe emotional distress, discomfort, annoyance, and anxiety, in an amount to be proven at time of trial.

55.    Further, because Defendants, and each of them, acted and/or failed to act with malice, fraud, and or/oppression, and/or in conscious disregard of Plaintiffs rights, Plaintiffs are entitled to an award of punitive damages within the meaning of Civil Code section 3294.

56.     Further, because Defendants, and each of them, breached the lease agreement with Plaintiffs and violated provisions of the Civil Code and Fair Amendments Housing Act, as discussed below, Plaintiffs are entitled to an award of attorney's fees.

57.     Further, because Defendants, and each of them, breached the lease agreement with Plaintiffs and violated provisions of the Civil Code and Fair Amendments Housing Act, as discussed below, Plaintiffs are entitled to an award of statutory fees.

### FIRST CAUSE OF ACTION

#### BREACH OF WRITTEN CONTRACT

#### (AS TO ALL DEFENDANTS)

58.     Plaintiffs refer to and incorporate here by reference each allegation contained in paragraphs 1-57 as though fully set forth herein.

59.     As a direct and proximate result of Defendants' breach of the residential lease agreement, the value of the leasehold held by Plaintiffs has been materially diminished and they have been deprived of the benefit of their bargain. Consequently, Plaintiffs have sustained general, special, and property damage in an amount to be established at trial.

60.     Furthermore, Plaintiffs are entitled to a recovery of attorney's fees pursuant to Paragraph 21 of the lease agreement.

### SECOND CAUSE OF ACTION

#### BREACH OF COVENANT OF QUIET ENJOYMENT

#### (AS TO ALL DEFENDANTS)

61.     Plaintiffs refer to and incorporate here by reference each allegation contained in paragraphs 1-60 as though fully set forth herein.

62.     The covenant of quiet enjoyment is codified in Civil Code section 1927. Implied in the landlord/tenant relationship is a covenant that Defendants will not interfere with each Plaintiff's quiet enjoyment of the Subject Property during the term of their tenancy.

63.     Defendants have breached the implied covenant of quiet enjoyment as alleged herein, including but not limited to their failure and refusal to repair the alleged habitability violations listed herein and to maintain the Subject Property in a safe and habitable condition

1  consistent with the purpose for which it was rented.

2       64.    As a direct and proximate result of Defendants' breach of the covenant of quiet

3  enjoyment, the value of the leasehold held by Plaintiffs has been materially diminished.

4  Consequently, Plaintiffs have sustained general, special, and property damage in an amount to

5  be established at trial.

6  THIRD CAUSE OF ACTION

7  BREACH OF IMPLIED WARRANTY OF HABITABILITY

8  (AS TO ALL DEFENDANTS)

9       65.    Plaintiffs refer to and incorporate by reference each allegation contained in

10  paragraphs 1-64 as though fully set forth herein.

11       66.    The defective conditions alleged herein constituted violations of state and local

12  housing laws and posed severe health, safety, and fire hazards. In particular these conditions

13  violated Civil Code sections 1941, 1941.1(a), (b), (d), and 1941.3; Health and Safety Code

14  section 17920.3(a)(6, 7, 11, and 13), (b)(2), (c), (d), (g); Los Angeles County Code of

15  Ordinances sections 11.20.160 and 11.20.330; and Culver City Municipal Code section

16  9.03.005.

17       67.    Plaintiffs did not cause, create, or contribute to the existence of the defective

18  conditions alleged herein.

19       68.    Defendants had actual and constructive notice of the defective conditions

20  alleged herein, but despite such notice, failed and refused to adequately repair and abate the

21  conditions. Defendants knew or should have known that permitting said defective conditions

22  to exist threatened the physical and emotional health and well-being of Plaintiffs, and posed a

23  serious threat and danger to them. Accordingly, they breached the warranty of habitability.

24       69.    As a direct and proximate cause of Defendants' breach of the implied warranty

25  of habitability, Plaintiffs have sustained general and special damages in amounts to be

26  determined at trial.

27       70.    Additionally, for the factual reasons stated herein, Plaintiffs are entitled to

28  recover their attorney's fees pursuant to Civil Code section 1942.4.

13

# FOURTH CAUSE OF ACTION

## NEGLIGENT MAINTENANCE OF THE PREMISES

### (AS TO ALL DEFENDANTS)

71.     Plaintiffs refer to and incorporate by reference each allegation contained in paragraphs 1-70 as though fully set forth herein.

72.     As landlords, owners, and/or managers of land, Defendants owed a duty of care under common law and Civil Code section 1714 to exercise due care in their management of the Subject Property so as to avoid foreseeable injury to others. This due care required Defendants to comply with all building, health, fire, and safety codes, ordinances, and regulations and other applicable laws applying to the maintenance and operation of residential rental housing.

73.     Defendants breached the duties herein by failing to conduct the proper inspections, refusing to conduct inspections, failing to make repairs, refusing to make repairs, allowing water to intrude into Plaintiff's unit thereby damaging their property and forcing them to relocate.

74.     As a direct and proximate result of Defendants' negligent maintenance of the property, the value of Plaintiffs' leasehold has diminished. Additionally, Plaintiffs suffered emotional and physical injury amounting to stress, illness, anxiety, sadness, annoyance and discomfort, lost income, and property damage.

75.     Defendants' conduct was grossly negligent in conscious disregard of the rights of Plaintiffs, thereby entitling Plaintiffs to punitive damages.

# FIFTH CAUSE OF ACTION

## PRIVATE NUISANCE

### (AS TO ALL DEFENDANTS)

76.     Plaintiffs refer to and incorporate by reference each allegation contained in paragraphs 1-75 as though fully set forth herein.

77.     The conditions at the Subject Property, which were either caused by Defendants or which Defendants failed or refused to repair, after notice was given, constituted a private

1    nuisance within the meaning of Civil Code section 3479. These defective conditions were

2    injurious to the health and safety of Plaintiffs, indecent and offensive to Plaintiffs, and

3    constituted substantial and unreasonable interferences with Plaintiffs' comfortable enjoyment

4    of the property.

5         78.   As a direct and proximate result of the private nuisance, Plaintiffs sustained

6    general, special, and property damage in an amount to be determined at trial.

7         79.   Further, in committing or allowing to be committed the actions or omissions

8    alleged herein, in full awareness of the factual circumstances and the legal requirements

9    imposed upon an owner/manager, in conscious disregard of the rights of Plaintiffs and with

10   malice, fraud, or oppression, Defendants' conduct falls within the ambit of Civil Code section

11   3294, and Plaintiffs are entitled to recover punitive damages.

12   SIXTH CAUSE OF ACTION

13   Trespass

14   (Against Defendant CHARLES DAILEY, Only)

15        80.   Plaintiffs refer to and incorporate by reference each allegation contained in

16   paragraphs 1-79 as though fully set forth herein.

17        81.   Defendant CHARLES DAILEY intentionally and willfully entered Plaintiffs'

18   unit on numerous occasions without consent and without providing notice of any kind, let alone

19   statutory notice pursuant to Civil Code section 1954.

20        82.   As a direct and proximate result of the private nuisance, Plaintiffs sustained

21   general, special, and property damage in an amount to be determined at trial.

22        83.   Defendant CHARLES DAILEY entered Plaintiffs' unit intentionally and

23   oppressively, in conscious disregard of the privacy rights of Plaintiffs and with knowledge that

24   Plaintiffs' leasehold permitted quiet enjoyment free from his unannounced and unconsented

25   intrusion. Defendant CHARLES DAILEY'S conduct thus entitles Plaintiffs to recover punitive

26   damages pursuant to Civil Code sections 3294 and 1954.

27   / / /

28   / / /

15
COMPLAINT

## SEVENTH CAUSE OF ACTION

VIOLATION OF THE FAIR HOUSING AMENDMENTS ACT (42 U.S.C. §§ 3604, 3617)

(AS TO ALL DEFENDANTS)

84.   Plaintiffs refer to and incorporate by reference each allegation contained in paragraphs 1-83 as though fully set forth herein.

85.   Defendants have injured Plaintiffs in violation of the federal Fair Housing Amendments Act by committing the following discriminatory housing practices:

A.   Discriminating in the terms, conditions, and privileges of the rental of a dwelling because of familial status, including but not limited to forbidding children to play or use any portion of the common areas unsupervised, or in the provision of services or facilities in connection therewith, because of familial status in violation of 42 U.S.C. § 3604(b)

B.   Making, printing, or publishing notices, statements, or advertisements, with respect to the rental of a dwelling that indicates a preference, limitation, or discrimination based on familial status or disability, or an intention to make any such preference, limitation, or discrimination in violation of 42 U.S.C. § 3604(c)

C.   Coercing, intimidating, threatening, or interfering with persons in their exercise of enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged any other person in the exercise or enjoyment of, any right granted by or protected by the Fair Housing Act in violation of 42 U.S.C. § 3617.

86.   By reason of Defendants' unlawful acts and practices, and directly and proximately caused thereby, Plaintiffs have suffered loss of important housing opportunities, violation of their civil rights, deprivation of the full use and enjoyment of their tenancy, and severe emotional distress and other damages according to proof.

87.   In doing the acts of which Plaintiffs complain, Defendants and their agents and employees intentionally or recklessly violated Plaintiff's civil rights. Accordingly, all Plaintiffs are entitled to punitive damages.

///

///

88.    There now exists an actual controversy between the parties regarding Defendants' duties under the Fair Housing Amendments Act. Accordingly, Plaintiffs are entitled to declaratory relief.

89.    Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above.

EIGHTH CAUSE OF ACTION

VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT (GOV. CODE §§12955,

ET SEQ.)

(AS TO ALL DEFENDANTS)

90.    Plaintiffs refer to and incorporate by reference each allegation contained in paragraphs 1-89 as though fully set forth herein.

91.    Defendants have injured Plaintiffs in violation of the California Fair Employment and Housing Act (hereinafter referred to as "FEHA") by committing the discriminatory housing practices:

A.    Discriminating in the terms, conditions, and privileges of the rental of a dwelling because of familial status in violation of California Government Code section 12955(a);

B.    Making, printing, or publishing notices, statements, or advertisements, with respect to the rental of a dwelling that indicates a preferences, limitation, or discrimination based on familial status or disability, or an intention to make any such preference, limitation, or discrimination in violation of California Government Code section 12955(c);

C.    Expressing a preference for or limitation on a renter because of familial status in violation of California Government Code section 12955(d);

D.    Harassing, evicting, or otherwise discriminating against any person in the rental of housing accommodations where the dominant purpose is retaliation against a person who, among other things, has opposed practices [which are] unlawful under FEHA, in violation of California Government Code section 12955;

E.   Aiding, abetting, inciting, compelling, or coercing the doing of any of the acts declared unlawful in FEHA, in violation of <u>California Government Code</u> section 12955(g);

F.   Otherwise making unavailable or denying a dwelling based on discrimination because of familial status, in violation of <u>California Government Code</u> section 12955(k);

G.   Threatening, intimidating, or interfering with persons in their enjoyment of a dwelling because of familial status in violation of <u>California Government Code</u> section 12955.7.

92.   In addition, FEHA requires Defendants to engage in a timely, good faith interactive process with a tenant to determine reasonable accommodations that would permit Plaintiffs an equal opportunity to use and enjoy their apartment. Defendants failed to enter into the interactive process pursuant to <u>Government Code</u> sections 12927(c)(1), 12955, 12900 et seq., and *Auburn Woods I Homeowners Association v. Fair Employment and Housing Commission*, 121 Cal.App.4th 1578 (2004). Defendants knew of Plaintiff's familial status and of the alleged violations of FEHA and the FHAA, but Defendants never sought to discuss the matter nor did they meaningfully respond o Plaintiffs' concerns on said matters.

93.   By reason of Defendants' unlawful acts and practices, and directly and proximately caused thereby, Plaintiffs have suffered loss of important housing opportunities, violation of their civil rights, deprivation of the full use and enjoyment of their tenancy, and severe emotional distress and other damages according to proof.

94.   In doing the acts about which Plaintiffs complain, Defendants and their agents and employees intentionally or recklessly violated Plaintiffs' civil rights. Accordingly, all Plaintiffs are entitled to punitive damages.

95.   There now exists an actual controversy between the parties regarding Defendants' duties under the Fair Housing Amendments Act. Accordingly, Plaintiffs are entitled to declaratory relief.

96.   Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern or practice of discrimination described above.

///

## NINTH CAUSE OF ACTION

VIOLATION OF THE UNRUH CIVIL RIGHTS ACT (CIVIL CODE § 51, ET SEQ.)

(AS TO ALL DEFENDANTS)

97.    Plaintiffs refer to and incorporate by reference each allegation contained in paragraphs 1-96 as though fully set forth herein.

98.    Defendants have injured Plaintiffs in violation of the Unruh Civil Rights Act, codified at Civil Code section 51, et seq., by discriminating against them and families with children in the operation of the Subject Property, a business establishment, because of familial status.

99.    Pursuant to the Unruh Civil Rights Act, Plaintiffs are entitled to statutory damages, among other remedies, of up to three times their actual damages as determined by the trier of fact, subject to a statutory minimum of $4,000 for each violation by each Defendant and to each Plaintiff.

## TENTH CAUSE OF ACTION

RETALIATORY EVICTION/TERMINATION OF TENANCY

(AS TO ALL DEFENDANTS)

100.    Plaintiffs refer to and incorporate by reference each allegation contained in paragraphs 1-99 as though fully set forth herein.

101.    Civil Code section 1942.5, subdivision (a), provides:

"if the lessor retaliates against the lessee because of the exercise by the lessee of his rights under this chapter (dealing with habitability) or because of his complaint to an appropriate agency as to tenantability of a dwelling, and the lessee of a dwelling is not in default as to the payment of rent, the lessor may not recover possession of a dwelling in any action or proceeding, cause the lessee to quit involuntarily, increase the rent, or decrease any services within 180 days of any of the following:

(1)    After the date upon which the lessee, in good faith, has given notice pursuant to Section 1942, or has made an oral complaint to the lessor regarding tenantability;

(2)    After the date upon which the lessee, in good faith, has filed a written complaint, or an oral complaint which is registered or otherwise recorded in writing, with an appropriate agency, of which the lessor has notice, for the purpose of obtaining

correction of a condition relating to tenantability

(3)    After the date of an inspection or issuance of a citation, resulting from a complaint described in paragraph (2) of which the lessor did not have notice;

(4)    After the filing of appropriate documents commencing a judicial or arbitration proceeding involving the issue of tenantability.

Any lessor or agent of a lessor who violates this section shall be liable to the lessee in a civil action or all of the following: (1) the actual damages sustained by the lessee; (2) punitive damages in an amount of not less than $100 nor more than $2,000 for each retaliatory act. Civil Code § 1942.5(f). In any such action, prevailing party shall be entitled to recovery of reasonable attorney's fees. Civil Code § 1942.5(g).

102.    Plaintiffs, as lessees, gave oral and written notice various times over several months in 2011 and 2012 to Defendants regarding tenantability.

103.    Plaintiffs, as lessees, filed complaints with the Culver City Department of Building and Safety and the Los Angeles County Department of Public Health regarding tenantability.

104.    A citation was issued by the Los Angeles County Department of Public Health on February 13, 2013.

105.    At all times during the relevant time period, Plaintiffs promptly paid rent pursuant to the Lease Agreement.

106.    MILLER issued its eviction notice on February 25, 2013, which is within 180 days of each of the instances referred to in paragraphs 102 through 104.

107.    Accordingly, Plaintiffs are entitled to an award of actual damages, punitive damages, statutory damages, and attorney's fees.

<u>ELEVENTH CAUSE OF ACTION</u>

CONSTRUCTIVE EVICTION

(AS TO ALL DEFENDANTS)

108.    Plaintiffs refer to and incorporate by reference each allegation contained in paragraphs 1-107 as though fully set forth herein.

109.    At all times relevant to this Action, Defendants and each of them knew of the dangerous, unsafe, and uninhabitable conditions that existed at the Subject Property.

1    Defendants further knew that these conditions violated their statutory, contractual, and legal

2    duties owed to Plaintiffs.

3          110.   Despite Defendants' knowledge of the dangerous, unsafe, and uninhabitable

4    conditions at the Subject Property, Defendants failed to correct them, with specific emphasis on

5    the heating systems, water storage and heating system, and electrical systems.

6          111.   As a result of the uninhabitable conditions at the Property, a water intrusion

7    event occurred that displaced Plaintiffs from their apartment for 10 days. Not only was

8    Plaintiffs' property damaged, for which they incurred damages, but they were rendered

9    temporarily homeless, and were forced to relocate with their dog and infant child at a cost of

10   $6,855.07. During this time, Defendants continued to collect rent in violation of law.

11         112.   The water intrusion event and the lack of heat and the other conditions at the

12   property were a direct result of Defendants' acts or omissions. As such, Plaintiffs were

13   constructively evicted and are entitled to seek general and special damages.

14                         TWELFTH CAUSE OF ACTION

15              VIOLATION OF THE UNFAIR BUSINESS PRACTICES ACT

16                  (BUS. AND PROF. CODE § 17200, ET SEQ.)

17                        (AS TO ALL DEFENDANTS)

18         113.   Plaintiffs refer to and incorporate by reference each allegation contained in

19   paragraphs 1-112 as though fully set forth herein.

20         114.   Each of the Plaintiffs was responsible for paying rent on a monthly basis during

21   their tenancy with Defendants.

22         115.   Defendants' failure to maintain the Subject Property and failure to abate known

23   habitability violations while demanding rent constitutes an unlawful business practice. Bus.

24   Prof. Code §17200. Specifically, Defendants violated section 1941.1, 1941.3, 1942.4, and

25   1942.5 of the California Civil Code; Section 17920 of the Health and Safety Code; Sections

26   11.20.160, 11.20.330 of the Los Angeles County Code of Ordinances; and section 9.03.005 of

27   the Culver City Municipal Code. Proof of these violations is contained in the Code

28   Enforcement Orders issued by the Los Angeles County Department of Public Health and the

                                    21

1    Culver City Building Safety Division.

2        116.   The charging Plaintiffs in this cause of action were each harmed and sustained

3    economic injury as a result of the practices alleged herein by having to pay full monthly rent

4    for an apartment that contained the material deficiencies listed herein.

5        117.   As a direct and proximate result of the aforementioned acts and omissions,

6    Defendants were unjustly enriched at the expense of Plaintiffs, and Plaintiffs are entitled to

7    restitution in an amount to be proven at trial.

8                            THIRTEENTH CAUSE OF ACTION

9                                  UNJUST ENRICHMENT

10                                (AS TO ALL DEFENDANTS)

11       118.   Plaintiffs refer to and incorporate by reference each allegation contained in

12   paragraphs 1-117 as though fully set forth herein.

13       119.   Commencing within the past four years and continuing to the present,

14   Defendants accepted rent from Plaintiffs at a rate of $1,720.00 per month and were enriched by

15   no less than $66,465.70. Defendants received this benefit under contractual and statutory duties

16   to provide services to Plaintiffs which were never provided. Plaintiffs' refusal to perform under

17   obligations conferred by the lease and by law constitutes an unjust retention of a benefit at the

18   expense of Plaintiffs.

19       120.   Plaintiffs are thus entitled to an award of damages in an amount by which

20   Defendants have been unjustly enriched, subject to proof at time of trial.

21                           FOURTEENTH CAUSE OF ACTION

22               INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

23   (AS TO DEFENDANTS MILLER & DESATNIK MANAGEMENT CO. AND CHARLES

24                                        DAILEY)

25       121.   Plaintiffs refer to and incorporate by reference each allegation contained in

26   paragraphs 1-120 as though fully set forth herein.

27       122.   Defendants, and each of them, engaged in outrageous conduct by knowingly and

28   willfully failing to make repairs and violating their rights as set forth above. Specifically, as

                                            22

referenced above, CHARLES DAILY:

    a. Perpetually came onto the property in the early morning hours to harass and spy on Plaintiffs and the other tenants;

    b. Entered Plaintiffs' apartment on numerous occasions, without their knowledge or consent, without providing statutory or any notice, and without substantial justification;

    c. Banged on Plaintiffs' fence, unplugged their extension cords, and threw the cords over the fence;

    d. Promised to fix or repair various defects at the property – in particular, Plaintiffs' heater, which is within CHARLES DAILEY's knowledge and experience as a licensed HVAC contractor -- only to then not abide by his promise and obligation to do so;

    e. Instructed or permitted MILLER to issue House Rules containing a facially discriminatory rule against children and families with children, and after being advised of the illegality of said rule, failed to remove it for months, only doing so before they…;

    f. Instructed or permitted MILLER to evict Plaintiffs after and because Plaintiffs i) lawfully informed Defendants of the defects alleged herein be correct; ii.) lawfully requested repair of said defects; iii.) lawfully requested an inspection by the appropriate agency; and iv.) lawfully received said inspection confirming the presence of the aforementioned defects.

    123.    Defendants, and each of them, engaged in this conduct with reckless disregard of the rights of Plaintiffs, with full knowledge of the wrongfulness of their actions.

    124.    Defendants' actions directly and proximately caused harm to Plaintiffs.

    125.    Plaintiffs suffered severe emotional distress, in fear of losing their home, in fear of adverse physical and emotional health impacts to themselves and their child, and in the actual suffering of physical harm for lack of habitable conditions.

    126.    Defendants, and each of them, committed these acts with malice, fraud, and oppression within the meaning of Civil Code section 3294. Therefore, Plaintiffs are entitled to seek punitive damages to punish Defendants and to dissuade other landlords and management companies from so acting.

///

///

## FIFTEENTH CAUSE OF ACTION

### NEGLIGENCE

### (AS TO ALL DEFENDANTS)

127.   Plaintiffs refer to and incorporate by reference each allegation contained in paragraphs 1-126 as though fully set forth herein.

128.   As owners, operators, and/or managers of the property, Defendants owed Plaintiffs a duty to exercise reasonable care in the ownership, management, and control of the Subject Property. This duty includes, but is not limited to: the duty to refrain from interfering with Plaintiffs' full use and quiet enjoyment of their rented premises; the duty to comply with all applicable state and local laws governing Plaintiffs' rights as tenants; the duty to maintain the Plaintiffs' premises in a safe, healthy, and habitable condition; and the duty to not obstruct Plaintiffs' full use and occupancy of their rented premises.

129.   Defendants, by the conduct alleged above, breach their duty of care by negligently and carelessly maintaining, operating, and managing the Subject Property.

130.   As a direct and proximate result of these breaches, Plaintiffs have sustained general and special damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each of them, pray for the following damages and relief to which they are entitled:

(1) For general damages in an amount conforming to proof;

(2) For special damages in an amount conforming to proof;

(3) For statutory damages under Civil Code Section 1942.4, including reasonable attorney's fees and costs;

(4) For statutory damages under Civil Code Section 1942.5, including reasonable attorney's fees and costs;

(5) For restitution of rents under Business and Professions Code section 17200;

(6) For statutory damages under 42 U.S.C. § 3604;

///

(7) For statutory damages under Unruh Civil Rights Act (Civil Code § 51), including treble damages of at least $4,000 per Plaintiff, plus reasonable attorney's fees and costs;

(8) For punitive damages;

(9) For injunctive relief amounting to (a) retraction of 60 day notice to vacate and (b) affirmative injunction requiring Defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to undergo fair housing training and to take affirmative action to provide equal housing opportunities to all tenants and prospective tenants regardless of familial status;

(10)   For declaratory relief that Defendants have violated the provisions of the applicable federal and state housing laws;

(11)   For reasonable attorney's fees;

(12)   For costs of suit incurred herein;

(13)   For all such other and further relief as the court may deem proper.

DATED: April 4, 2013                    HANGER, STEINBERG, SHAPIRO & ASH


BY:
                                        MARC S. SHAPIRO
                                        JONATHAN P. CYR
                                        Attorneys for Plaintiffs
                                        KRISTOPHER BAGLEY,
                                        KYLE BAGLEY and KEIRA BAGLEY, a
                                        minor, by and through her Guardian ad
                                        Litem, KYLE BAGLEY

023/0702

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs hereby demand a trial by jury as to all issues and causes of action which are

3 subject to a jury trial.

4    DATED: April 4, 2013                    HANGER, STEINBERG, SHAPIRO & ASH

5

6                                   BY:

7                                        MARC S. SHAPIRO
                                         JONATHAN P. CYR
8                                        Attorneys for Plaintiffs
                                         KRISTOPHER D. BAGLEY,
9                                        KYLE L. BAGLEY and KEIRA
                                         BAGLEY, a minor, by and through her
10                                       *Guardian ad Litem*, KYLE L. BAGLEY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

EXHIBIT "A"





*Our copy of lease*

*6 Month*

Apartment No._____

**LEASE**

YOU CAN
SHARE
THE DREAM

(Prepared in accordance with general California Landlord-Tenant Law in effect as of the revision date. Consult with your attorney about local technicalities or subsequent changes in the law.)

OWNER: *Leslie Thomsen*

RENTER: *Kristopher & Kay Bagley*

PREMISES: *4067 Lafayette Pl. Culver City Ca 90232*

APT.NO.      ADDRESS           (ST.,AVE.,PL.,BLVD.,ETC.)                              ZIP CODE

Owner and Renter agree that Renter's performance of and compliance with each of the terms hereof, and with Owner's House or Pool Rules (if any) which are incorporated herein by reference, constitute a condition on Renter's right to occupy the Premises. Any failure of compliance or performance by Renter shall allow Owner to forfeit this agreement and terminate Renter's right to possession.

TERM: From and including *12/1/08*     To and including *5/21/09*

A. Rent Start Date *11/20/08*

B. Rent per Month  $ *1720.00*

C. Day of Month Rent Due  *1ST*

D. Late Rent Charge  $ *50.00*

E. Returned Check Charge  $ *50.00*

F. Security Deposit  $ *1720.00*

G. Owner Paid Utilities  *Water*

H. Parking Space (Lic./Space#)  *Yes*

I. Storage Space  *NO*

J. Maximum Occupancy  *2*

(1) per Agreement  *2*

(2) per Building Code  *2*

K. Named Renter  *Kristopher & Kay Bagley*

L. Added per Occupant Rent  $ *N/A*

M. Owner's Personal Property  *Stove, Frig, Washer/Dryer*

N. Charitable Organization  *N/A*

O. Pets  *1 dog*

P. Inspection Consent   Circle One   Yes   No
See Paragraph 9

1.   **Rent/Late Rent Charge:** Should the Rent Start Date (Section A) be other than the first day of the month, Owner may prorate the rent to the first day of the succeeding month.   Renter shall pay owner the rent due for each rental month in advance, on the date and in the amount set out in Sections B and C.   If Renter fails to pay rent as and when due, Renter shall pay a (one-time per such unpaid amount) Late Charge as set out in Section D.   If Renter's check is returned "NSF," Renter shall pay a Returned Check Charge set out in Section E and Owner may demand that future rent payments be by cashier's check or money order.   Such Late Charge and/or Returned Check Charge may be deemed additional rent by inclusion in an eviction notice or may be deducted from Renter's Security Deposit.   Any Security Deposit refund-claim shall be deemed compensated to the extent of any such deduction.   All of Renter's monetary obligations hereunder are deemed rent.

2.   **Security Deposit:** Renter shall pay to Owner the total Security Deposit set out in Section F to secure Renter's compliance with all terms of this Agreement and Owner's Rules and Regulations.   (In addition to the first month's rent, Owner may demand a security deposit not to exceed two times the monthly rent for unfurnished apartments and three times the monthly rent for furnished apartments.) No portion of the Security Deposit shall be deemed rent for any rental month unless Owner so elects nor shall it constitute a measure of Owner's damages.   No interest is payable on the Security Deposit unless required by law.   Any refund of the Security Deposit to Renter shall be made in an amount and manner in accordance with the provisions of California Civil Code Section 1950.5.

3.   **Utilities:** Renter shall pay for all utilities supplied to the Premises except those set out in Section G.   If Renter defaults in the payment of rent, Owner may instruct any utility company to charge any utilities so designated, henceforth, to Renter and place the same in Renter's name, and Renter is obligated to pay for the same thereafter.   Owner is authorized to get notice from any utility company of any default in payment by Renter.   If Owner is charged with any such amount, Owner may recover it from Renter or deduct the same from the Security Deposit as unpaid rent or damages.   Renter shall not use any common area utilities.   To the extent allowed by law, the pro-rated amount of any penalty for utility overuse allowable to the Premises shall be payable by Renter as additional rent.

4.   **Parking/Storage Rules:** If Renter is assigned a parking space on Owner's property, set out in Section H, Renter shall use such space only for the parking of operable, licensed and currently registered passenger automobiles and not for the washing, painting or repair of such vehicles.   Renter shall not park, or allow anyone else to park, in any other space on Owner's property.   Renter shall not assign or sublet any such parking space and Owner may have unauthorized vehicles towed away.   Upon seven (7) days written notice to Renter.

Revised  4/2002 · STD-LEAS
624AGLA 2002

Form provided as a membership service of the APARTMENT ASSOCIATION of GREATER LOS ANGELES
621 South Westmoreland Avenue  Los Angeles  CA 90005

Owner may terminate Renter's parking privilege or change the size and/or location of Renter's parking space or storage space described in Section I.

5.  Named Renter/Assignment/Subletting: The Premises shall not be occupied by more than the maximum number of "Agreement" occupants set out in Section J, unless required by law, nor by any person other than the Named Renter set out in Section K without the advance written consent of the Owner and at the additional rent set out in Section L or prescribed by law.  Renter's right to possession shall not be assigned nor the Premises sublet.  (Where applicable, LAMC Section 91.1207 restricts the maximum occupants to that number set out in Section J.)

6.  Good Condition Receipt: Renter has examined the Premises including, but not limited to, the furniture, furnishings, fixtures, appliances and equipment provided by Owner and set out in Section M, windows, doors, plumbing and electrical facilities, hot and cold water supply, building grounds and appurtenances, accepts the same "AS IS" and acknowledges that the same are in good, clean and sanitary order, condition and repair unless noted to the contrary on Owner's copy of this Agreement.  If an inventory is attached hereto it shall be deemed incorporated herein by reference.  Except as provided by law, Owner shall not be required to make any improvements, replacements or repairs to the Premises and, if allowed by law, any such work shall be at Renter's expense.  Upon termination or expiration of the tenancy, Renter shall return the Premises to Owner in as good order, condition and repair as when received, ordinary wear and tear excepted, and free of Renter's personal property.  Trash and debris, burns, stains, holes or tears, of any size or kind, in the carpeting, draperies, walls, windows or doors, among other conditions, shall not be deemed ordinary wear and tear.  Renter acknowledges that no representation as to the condition or repair of the Premises, or as to Owner's intention with respect to any improvement, alteration, decoration or repair thereof, has been made to Renter unless noted on Owners copy of this Agreement.   Renter's "GOOD FAITH" in the assertion of any habitability defense to eviction for nonpayment of rent shall be established.  Evidence of Renter's "good faith" shall include, but not be limited to, written proof of Owner's knowledge and opportunity to repair any claimed housing deficiency prior to service of an eviction notice, whether by a copy of a request-for-maintenance-demand delivered to Owner or otherwise, and lack of Renter-causation of the claimed housing deficiency.

7.  Maintenance and Repair/Alterations: Renter shall: (a) keep the Premises in a clean and sanitary condition; (b) dispose of all rubbish, garbage and waste in a clean and sanitary manner; (c) properly use and operate all electrical, gas and plumbing fixtures and keep the same in a clean condition; (d) not permit any person, in or about the Premises with Renter's consent, to deface, damage or remove any part of the structure in which the Premises are located nor the facilities, equipment or appurtenances thereto or thereon, nor himself do any such thing; (e) occupy and use the Premises in the manner in which they are designated and intended to be occupied and used.  Renter shall be liable for the expense of any repair caused by Renter's failure to comply with these conditions.  Renter shall not alter the Premises or paint or wallpaper any portion thereof.  Renter shall not install or use any dishwasher, clothes washer, clothes dryer or air conditioner in or about the Premises except those which may be supplied by Owner.  Renter is responsible for any telephone hook-up fee, and shall carry any telephone or wire maintenance insurance offered by the telephone company.

8.  Damage/Destruction: If the Premises, or structure in which they are located, are totally or partially destroyed and become unavailable for occupancy due to fire, earthquake, accident or other casualty beyond the control of Owner and Renter, for a period of twenty (20) days or more, then, and only then, any party hereto may terminate this Agreement with written notice to all other parties.  If this tenancy is not so terminated, or if the period the Premises are unavailable for occupancy is less than twenty (20) days for any of the above reasons or for reasons of Owner's maintenance, repair, modification, alteration, remodeling, reconstruction, extermination, or the like, the sole remedy of Renter shall be an abatement of the rent, proportionate to the interference with full use and enjoyment, until the Premises are again available for occupancy.

9.  Inspection/Entry: Owner may enter and inspect the Premises, during business hours and upon reasonable notice to Renter, without Renter's presence, for any lawful purpose.  Owner may enter the Premises without advance notice to Renter in case of an emergency.  Renter shall not add nor change any lock or locking device, bolt or latch on the Premises and shall provide Owner with a key to any such device, forthwith, on demand.  Renter acknowledges that Owner is entitled to a key to the Premises and may use the same for entry as provided herein or by law. If you circle "Yes" in Section P, you consent to unannounced entry of your apartment by government inspectors, without your presence.

10  Rules and Regulations: Renter, and all persons in or about the Premises with Renter's consent, shall comply with all Rules and Regulations made by Owner, from time to time, and delivered to Renter, including House and Pool Rules.  Owner shall not be obligated to enforce any such Rules and Regulations, or the terms of any other Agreement, and Owner shall not be liable to Renter for any violation of such Rules and Regulations or other Agreements by any other Renter or person.  All visitors to the Premises, forthwith on Owner's demand, shall produce picture-identification and sign a visitor log book or be prohibited from entry.

11.  Insurance: In consideration of this rental, Renter shall obtain and pay for any insurance coverage necessary to protect Renter from any loss or expense due to personal injury or property damage, including but not limited to that caused by any act or omission of any party, including Owner or co-tenants, criminal act, war, riot, insurrection, fire or act of God.  The amount of monetary damage caused to Owner by renter's breach of this agreement shall be deemed to be an amount equal to the amount of any loss sustained by renter by any such act or event and shall offset any claim by Renter against Owner.

12.  Compliance With Laws: Renter shall not violate any law or commit or permit any waste, damage to, or nuisance in or about, the Premises, or in any way annoy any other renter, or operate any business in or about the Premises, or do or keep anything in or about the Premises that will obstruct the common areas or usage thereof, or increase Owner's insurance premiums.

13.  Expiration/Holding Over/Death: Upon expiration of this Agreement, Renter shall vacate the Premises without further notice.  Any holding over with the consent of the Owner, shall be construed as a month-to-month tenancy on the terms of this Lease, as applicable.  Renter's death shall terminate this Agreement.  Thirty day termination notice required.

14.  Waiver Of Default: Owner's failure to require strict compliance with the terms of this Agreement, or to exercise any right provided for herein, shall not be deemed a waiver of such compliance or right, or waive such compliance or right in the future, and Owner's acceptance of rent with knowledge of any default by Renter shall not be deemed a waiver of such default, nor limit Owner's rights with respect to that or any subsequent default.

15.  Surrender Of Premises/Property: In addition to Renter's liability under Paragraph 13, if Renter is absent from the Premises for thirty (30) consecutive days during which rent is unpaid, and if Owner has a reasonable belief that Renter does not intend to maintain occupancy of the Premises, the Premises and all of Renter's personal property located therein shall be deemed surrendered to Owner and Owner may re-enter and retake possession of the Premises and dispose of Renter's personal property by delivering it to the Charitable Organization set out in Section N, or to any like organization if the named organization refuses the property.  If neither method of disposal of the property is effective, Owner may dispose of the property in any other manner Owner chooses, in Owner's absolute discretion.

16.  Non-Curable Breach of Agreement: The following, by way of illustration and not limitation, shall constitute a non-curable breach of this Agreement: (a) Police raid upon the Premises; (b) Arrest of Renter, family member, occupant, guest or visitor for possession/sale/storage of any narcotic/controlled substance/chemical or herbal contraband in or about the Premises; (c) Failure to permit Owner's entry of the Premises following receipt by Renter of written notice of Owner's intent to enter the Premises; (d) Failure to cooperate with Owner or any pest controller/ fumigator/exterminator following receipt by Renter of notice that such services will be performed in or about the Premises; (e) Defaults by Renter causing Owner to serve more than two notices to pay or quit, or perform or quit, in any twelve (12) month period, whether or not Renter subsequently cures such defaults; (f) A misrepresentation or material ommission on Renter's Rental Application; (g) Delivery of any security door/gate key to anyone not a party to this Agreement; or (h) Failure to comply with any demand by Owner concerning Renter's parking privilege.

17.  Pest Control/Fumigation/Extermination: Upon demand by Owner, Renter shall temporarily vacate the Premises, for a reasonable period required, to allow cited or needed repairs, pest or vermin control work to be done. Rent shall be abated during Renter's absence. Renter shall comply forthwith, with all instructions from the pest controller, fumigator and/or exterminator regarding the preparation of the Premises for the work, including the proper bagging and storage of food, perishables and medicine.

18.  Pets/Water Beds/Musical Instruments: Renter shall not bring or keep any pet (dog, cat, bird, reptile, etc.), liquid-filled furniture or musical instrument on the Premises, unless noted in Section O of Owner's copy of this Agreement.  Liquid-filled furniture shall be accepted only with proof of $100,000 insurance.

19.  Designation Of Parties: The term "Owner" includes a "manager," "agent of the owner," "management company," "Trustee" of a Trust, or any other person or entity acting on behalf of the owner as the Lessor of the premises entitled to rent the premises, collect the rent for the premises, and prosecute eviction actions.

20.  Partial Invalidity: If any portion of this Agreement is held invalid, it shall not affect the validity of any other portion of this Agreement.

21.  Attorneys Fees: If any legal action or proceeding is brought by Owner or Renter related to this Agreement, the prevailing party shall be entitled to recover attorneys fees not to exceed $500.00.

22.  Pre-Trial Rent Deposit: In any action for unlawful detainer, Renter shall deposit unpaid rent with the Court by cashier's check or money order, if so required by law.

23.  Guarantor(s): On demand by Owner, Renter shall obtain the execution of a Continuing Guarantee Agreement provided by owner, by an agreed upon Guarantor.  Said agreement shall be deemed incorporated herein and subject hereto.

24.  Rent Acceptance: Rent tendered by a third person for Renter's benefit may be accepted without creating any new tenancy.

25.  Credit Report: As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency and/or your credit may be checked periodically.

26.  Entire Agreement: The foregoing constitutes the entire agreement between the parties and supersedes any oral or written representation or agreement contrary hereto.  Renter represents that he has relied solely on his own judgment, experience and expertise in entering into this Agreement. Any modification of this agreement, to have any legal effect, must be in writing and signed by owner.

27.  Estoppel Certificate: Within 10 days after written notice, Renter agrees to execute and deliver an estoppel certificate as submitted by Owner acknowleging that this Agreement is unmodified and in full force and effect or in full force and effect as modified and stating the modifications.  Failure to comply shall be deemed Renter's acknowledgement that the certificate as submitted by Owner is true and correct and may be relied upon by a lender or purchaser.

28.  ☐  Lead Disclosure: If checked, the Premises were built prior to 1978 and the following must be completed by the Owner, Renter and Real Estate Agent, if any.

Lead Warning Statement

Housing built before 1978 may contain lead-based paint.  Lead from paint, paint chips, and dust can pose health hazards if not managed properly.   Lead exposure is especially harmful to young children and pregnant women.   Before renting pre-1978 housing, owners must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling.   Renters must also receive a federally approved pamphlet on lead poisoning prevention.

Owner's Disclosure (initial where appropriate)

_____  Owner has no knowledge of lead-based paint and/or lead-based paint hazards in the Premises.   Owner has no reports or records

pertaining to lead-based paint and/or lead-based paint hazards in the Premises.

_JM_ See Attached.  (A separate form is attached disclosing Owner's information.)

Pest Control Notice

For new tenants a copy of a 'chemicals used notice' from the building's pest control company is attached to the original rental agreement. (If attached) Please sign the Landlord's copy of the notice on the original rental agreement indicating the tenants' actual receipt of the notice."

_NB_ Renter has received a "chemicals used" notice from owner's pest control company per Civil Code 1940.8.

This notification-requirement does not appear to apply if there is no written pest control contract.            _1850.63_

Renter's Acknowledgment (initial)

_KB_ Renter has received the pamphlet "Protect Your Family from Lead in Your Home".

_KB_ Renter agrees to promptly notify Owner in writing of any deteriorated and/or peeling paint.

Renter has received instructions on paying monthly rent to owner or agent as follows:

Person to whom rent is to be paid: **DREAMFIELDS PROPERTIES**

Address where rent is to be paid: **4171 Lafayette Place**

Days on which rent may be paid: _1st_  **Culver City, CA 90232**

Times at which rent may be paid: _24 HR  DROP  IN MAIL  BOX_

Telephone no. where rent may be paid: _(310) 837-1227_

Real Estate Agent's Acknowledgment (initial, if agent involved)

_NB_ Real Estate Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

TOXIC SUBSTANCE WARNING NOTICE: The Owner is required to give you notice that areas on this property contain one or more of some 800 toxic substances and chemical substances, such as swimming pool disinfectant, cleaning substances, automobile exhaust fumes, bar-b-que or second-hand cigarette smoke, laundry room fluids or emissions, etc., known to the State of California to cause cancer, reproductive toxicity, birth defects and reproductive harm. Please contact the owner for further information.

NOTICE: The California Department of Justice, sheriff's departments, police departments serving jurisdictions of 200,000 or more and many other local law enforcement authorities maintain for public access a data base of the locations of persons required to register pursuant to paragraph (1) of subdivision (a) of Section 290.4 of the Penal Code. The data base is updated on a quarterly basis and is a source of information about the presence of these individuals in any neighborhood. The Department of Justice maintains a Sex Offender Identification Line through which inquiries about individuals may be made. This is a "900" telephone service. Callers must have specific information about individuals they are checking. Information regarding neighborhoods is not available through the "900" telephone service.

Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

Owner _____      Renter _____

Real Estate Agent _____

Additional Terms: _____

_____

DATED _11/24/08_                          DATED _11/24/08_

OWNER _Leslie Thomsen_                     RENTER _Kyle L. Bagley_

                                                  _Kristopher D. Bagley_

_4171 Lafayette Pl._                        _4167 Lafayette Pl._
ADDRESS                                     ADDRESS

_Culver City,_                              _Culver City_
CITY                                        CITY

California _____ _90232_                California _____ _90232_
                     ZIP CODE                                    ZIP CODE

33
Exhibit 1

# DREAMFIELDS

## ADDITIONAL TERMS OF RENTAL OR LEASE AGREEMENT

_KB_ It is a non-curable breach of contract to be late with rent payments three times in any consecutive 12 months.

_KB_ No inoperable vehicles may be parked on the premises at any time, or any unregistered vehicles.

_KB_ No vehicles that leak oil can be parked in drive ways or garages, if there are oil spots at time of move out you will be charged a cleaning fee.  *there was a previous oil spot on the driveway ∞ upon move in.

_KB_ Rent is due on the first of every month and the late fee will be applied on the 5th.

_KB_ No personal property will be allowed in common areas.

_KB_ If you change the locks you MUST give Leslie Thomsen a copy of the new key prior to the change. (There will be a rekey when tenant moves out)

_KB_ Within thirty days you will provide Leslie Thomsen with your current phone number.

_KB_ Tenant agrees to transfer utilities into their name on the RENTAL DATE.

11/24/08    Kristopher & Kyle Bagley
Date         Tenant

# TIP SHEET ON MOLD

Residents can help minimize mold growth in their homes by taking the following actions:

- Open windows. Proper ventilation is essential. If it is not possible to open windows, use a fan to circulate the air.
- In damp or rainy weather conditions, keep windows and doors closed.
- If possible, maintain a temperature of between 50 and 75 degrees at all times.
- Clean and dust your home on a regular basis. Regular vacuuming, mopping and use of environmentally safe household cleaners are important to remove household dirt and debris that contribute to mold growth.
- Periodically clean and dry the walls and floors around the sink, bathtub, shower, toilets, windows and patio doors using a common household disinfection cleaner (or water and bleach).
- On a regular basis, wipe down and dry areas where moisture sometimes accumulates, such as countertops, windows and windowsills.
- Use the preinstalled bathroom fan or alternative ventilation when bathing or showering and allow the fan to run until all excess moisture has vented from the bathroom.
- Use the exhaust fans in your kitchen when cooking or running the dishwasher, allowing the fan to run until all excess moisture has vented from the kitchen.
- Use care when watering houseplants. If spills occur, dry up excess water immediately.
- Thoroughly dry any spills or pet urine on carpeting.
- Do not overfill closets or storage areas. Ventilation is important in these spaces.
- Do not allow damp clothing, linens, or other cloth materials to lie in piles for an extended period of time.
- Immediately report to the management office (1) any water leak or excessive moisture in your home, storage room, garage, or any common area. Or (2) any musty odors that you notice in your home.
- Immediately report to the management office any evidence of mold growth that you cannot remove by wiping with a common household cleaner. Report any area of mold that reappears despite regular cleaning.
- Immediately report to the management office any malfunction with your heating, ventilation, air-conditioning system or laundry system. Do not block any heating, ventilation or air conditioning ducts in your home.
- Immediately report to the management office any inoperable doors or windows.

# ADDENDUM TO LEASE AGREEMENT

Property _4067 Lafayette_ Apartment Number _____

## MOLD and MILDEW

Resident must provide appropriate climate control, keep the Premises clean and take other measures to retard and prevent mold and mildew from accumulating in the Premises.

A. Resident shall clean and dust the Premises on a regular basis and is to remove visible moisture accumulation on windows, walls and other surfaces as soon as reasonably possible.

B. Resident shall not block or cover any of the heating, ventilation or air conditioning ducts in the Premises.

C. Resident shall immediately report to the management office:
   a. Any evidence of a leak or excessive moisture in the Premises.
   b. Any evidence of mold or mildew-like growth that cannot be removed by Resident by simply wiping the growth with a common household cleaner.
   c. Any failure or malfunction in the heating, ventilation, air conditioner or laundry system in the Premises, and
   d. Any inoperable doors or windows.

D. Resident shall be responsible for damage to the Premises and Resident's property, as well as injury to Resident or Resident's invitees resulting from Resident's failure to comply with the above terms.

E. Resident has received a "Tip Sheet on Mold" with this Notice.

_____     11/24/08
Resident                             Date

_____     11/24/08
Resident                             Date

_____     _____
Resident                             Date

_____     _____
Resident Manager                     Date

## STANDARD SECURITY DEPOSIT AGREEMENT

Unit No.

Renter: *Kristopher + Ky Bagley*

Premises: *4067 Lafayette Pl., Culver City, CA 90232*

Security Deposit $ *1720*     300    1220     Paid By: ☒ Cash  ☒ Check  ☐ Money Order  ☐ Deposit Transfer
(Note: This form is not a receipt for payment of rent)

1. Refund of the full Security Deposit by Owner to Renter depends upon Renter's full performance of the following terms of this Agreement. Renter agrees in order to avoid deductions from the Security Deposit:
   A. To deliver to Owner a written notice of Renter's intent to vacate at least 30-days prior to any such vacating and to vacate in strict compliance with such notice;
   B. To pay in full all rent, late charges, and other charges, if any, according to the terms of the Rental Agreement;
   C. The Premises shall not be damaged nor evidence any use by Renter beyond ordinary wear and tear;
   D. The entire Premises including (if any) range, filter(s), screen(s), refrigerator, bathroom(s), closet(s), walls and carpets shall be cleaned professionally by a licensed, insured company, to Manager's satisfaction, and such satisfaction expressed shall be evidenced by a written cleaning-release of Renter;
   E. To remove all rubbish and discards from the Premises and to dispose of same in proper disposal containers;
   F. To return all keys to the Premises to the Manager on vacating the Premises.
2. All costs of labor and materials for needed cleaning, repairs and replacement beyond ordinary wear and tear based on Premises condition following inspection will be deducted from the Security Deposit.
3. If the Premises must be repaired or re-painted, Renter will be charged for the unused portion of the item damaged or the current paint job, as follows: A new carpet is deemed to last 5 years and a new paint job is deemed to last three years. In an instance:
   A. the premises had a new carpet and new paint job at the commencement of the tenancy,
   B. Renter vacates after one year; and,
   C. The Premises, because of its condition, is required to be re-carpeted and/or re-painted;
   D. An amount equal to 4/5's of charge for the carpet when new and 2/3's of the charge for the paint job when new will be deducted from Renter's Security Deposit.
4. No portion of the Security Deposit shall be used or claimed to offset any rent or other amounts that may be due to Owner until Premises have been vacated by all persons and the keys returned to the Manager.
5. Any Security Deposit refund due to Renter shall be mailed to Renter to the forwarding address left with the Manager or if none, to Renter in care of the Premises, within three weeks of Renter's vacating. The refund check will be payable jointly to all persons who appear as "Renter" on the Rental Agreement.
6. The front of the refund check may state: "Any alteration of the endorsement shall make the check null and void." This endorsement may read: "Endorsement by Renter constitutes a full and release of all claims against Owner/Manager including any claim for further refund of the Security Deposit."
7. Renter represents and warrants that Renter has been advised about the house rules, occupancy obligations, standards of conduct, vacating procedures and Renter's right to request an initial inspection at termination. Renter understands and agrees to such rights and obligations.
8. Renter understands that the Premises are not in a full security complex and that Owner does not employ security personnel to patrol the Premises to provide for Renter's safety. Owner does not take responsibility to mediate disputes between or among Renters and the obligation to resolve disputes with others on the Premises is accepted by Renter as one of the obligations of the tenancy. Each Renter assumes the risk of residing on the Premises for himself/herself, his/her or their children and/or their personal property, without recourse against the Owner or Manager of the Premises.

| | |
|---|---|
| _____ Renter | Date *11/24/08* |
| _____ Renter | Date *11/24/08* |
| _____ Renter | Date _____ |
| _____ Renter | Date _____ |

*As used in this Standard Security Deposit Agreement the singular of a term shall include the plural and the term "Renter" shall include all persons listed hereon as Renter.

Revised 1/2008 · SEC-DEP-AGREE     Form provided as a membership service of the APARTMENT ASSOCIATION OF GREATER LOS ANGELES
© AAGLA 2007     621 South Westmoreland Avenue, Los Angeles, CA 90005

EXHIBIT "B"

# MILLER & DESATNIK MANAGEMENT CO., INC.

3623 MOTOR AVENUE, LOS ANGELES, CA. 90034 ✦ (310) 838-1828 FAX (310) 841-2161

September 21, 2012

Resident
4065-69 Lafayette
Culver City, CA 90232

Dear Resident:

This letter is going out to all tenants. It has come to our attention that tenants are washing their cars at the building.

**Please see the attached house rules. There is no washing cars permitted on the property.**

Thank you for your immediate attention to this matter.

Sincerely,

Miller & Desatnik

39
Exhibit 1

## HOUSE RULES

+ Rent is payable in advance on or before the due date.
+ No car washing or automobile repairs or mechanical work is permitted on the premises.
+ Laundry facilities should only be used between the hours of 7:00 am and 10:00 pm.
+ No pets permitted, unless approved in writing.
+ Potted plants are allowed inside your apartment only, not on balconies or balcony ledges, patios, outside your door or any other location.
+ No personal belongings including bicycles, barbeque grill, potted plants, play equipment or other items may be placed in halls, stairways, balconies or balcony ledges, outside your front door, or anywhere about the building.
+ Personal items are to be stored, inside your apartment only, not in the common areas such as your porch, parking space etc. Do not hang towels, mops etc. on your balcony.
+ Garbage should be contained in a tied-plastic bag prior to depositing into communal rubbish container.
+ Check to make sure your smoke detectors work at least twice a year, if inoperable must be reported immediately. Do not tamper with nor remove smoke detectors.
+ Leaking faucets and running toilets should be reported immediately.
+ Noise levels must not disturb neighbors. All conversations, musical instruments, television sets, stereos, radios etc., are to be at a moderate volume so they do not disturb your neighbors and should not be audible outside of your apartment. Special consideration must be taken prior to 8 am and after 10 pm.
+ The specific person(s) authorized to occupy your apartment are listed on your rental agreement. Additional or substitute occupants are prohibited without written consent from the management.
+ House guests must be registered with the management and may remain only for the time period approved in advance by the management. Houseguests are defined as any guest(s) who remain in an apartment in excess of two consecutive nights.
+ Residents are responsible for the conduct of their guests and the adherence to these rules at all times. Residents and guests must be orderly at all times any disturbances caused by occupants or visitors shall be cause for eviction. Residents are also financially responsible for any damages caused by their guests.
+ Guardians must supervise their charges at all times. There is no play area designated on the premises.
+ Management is not responsible for fire damage or theft of personal property including but not limited to jewelry, money, apparel or other items in said premises, including storage areas, carports and garages.
+ Residents are responsible and required to pay for all damage beyond normal wear & tear.
+ To avoid plumbing stoppages use a plunger before reporting a stoppage, and preventatively, use liquid plumber in drains every 6 months .
+ Cost of repairs for plumbing, stoppage of waste pipes or drains, caused by negligent or improper usage or the introduction of foreign articles or material into the system will be the responsibility of and must be paid for by the resident.
+ No trash or other material may be accumulated that will create a hazards or be in violation of any health, fire or safety ordinance or regulation. Apartment must be kept clean and sanitary and free from objectionable odors.
+ Each resident shall use only the parking space assigned to him/her. Failure to do so will be construed as illegal parking and such vehicles may be towed away at the resident's expense. Residents shall use the assigned space for the parking of operable, licensed and currently registered passenger automobile. Vehicle mechanical repairs are not to be performed on the premises.
+ The roof of the building is off limits to all persons except authorized repair or maintenance personnel
+ In the event of emergency or good reason to believe such may exist, landlord reserves the right to enter the premises during resident's absence without prior permission.

EXHIBIT "C"

# ENVIRONMENTAL HEALTH
## HOUSING OFFICIAL INSPECTION REPORT

COUNTY OF LOS ANGELES, DEPARTMENT OF PUBLIC HEALTH

INSPECTION DATE(S): 3/15/13
COMPLIANCE DATE(S): 3-6-13
SITE NUMBER: 372933

SITE ADDRESS: 4065-69 Lafayette Pl    90032    PERMIT/LIC #:
CENSUS TRACT: 201(.2)    PRO/DIST: 14    SERVICE CODE: 5    SPA: 5

OWNER NAME/DBA:

OWNER MAILING ADDRESS:

REFERRALS: ☐ B & S  ☐ Fire  ☐ Zoning  ☐ MAD/VCD  ☐ Other:

☐ No Significant Health Code Violations Observed at Time of Inspection

The checked items represent Health Code violations for the units or areas specified and must be corrected by the compliance date(s) given above, unless otherwise stated in the body of the report. SEE REVERSE SIDE FOR VIOLATION CATEGORY INSTRUCTIONS.
All violations, including violations existing in units not inspected, shall be corrected in a workmanlike manner to conform with all state and local regulations. Obtain any necessary approvals and/or permits before commencing repairs or construction.

| VIOLATION CATEGORIES | AREA/UNITS | | | | COMMENTS/ADDITIONAL INSTRUCTIONS |
|---|---|---|---|---|---|
| INSECTS | | | | | Unit 4067 |
| RODENTS | | | | | 1) Observed peeling/chipping paint around window |
| WATER SUPPLY | | | | | of kitchen, living room windows, bathroom windows, |
| PLUMBING | | | | | and bedroom window |
| STAIRS | | | | | |
| WALLS | ✓ | | | | 2) Observed non functioning/opening windows in |
| FLOORS | | | | | living room and dining room area |
| CEILINGS | | | | | 3) Observed non functioning lock to kitchen window |
| ELECTRICAL | | | | | 4) Observed damaged/broken window in bathroom |
| POOL/SPA | | | | | 5) Observed improperly closing window in bedroom |
| TOILETS | | | | | 6) Observed missing baseboard in laundry room and |
| SINKS | | | | | kitchen |
| BATH/SHOWER | | | | | |
| COMFORT HEAT | | | | | |
| APPLIANCES/FURN | | | | | |
| OCCUPANCY | | | | | |
| LIGHTING | | | | | |
| WINDOWS/VENTIL. | ✓ | | | | |
| REFUSE AREA | | | | | |
| SANITATION | | | | | |
| MAINTENANCE | | | | | |
| ROOF | | | | | Lead sticker posted here |
| VENT SCREENS | | | | | |
| MISCELLANEOUS | | | | | |

Not available for Inspection - Units:
Tenant stated no problems - Units:
No problems found - Units:

SITE CONDITION: ☐ I/73 ☐ II/74 ☐ I/75 ☐ IV/76

OFFICE ADDRESS AND PHONE NUMBER
Bureau of District Surveillance and Enforcement
West District Office
711 Del Amo Bl.
Torrance, CA 90502
Tel: (310) 354-6390 - Fax: (310) 523-1034

INSPECTED BY: Amy OLShirk    E.H.S.
REPORT RECEIVED BY: USMAIL
FILE:    PAGE ___ OF ___

RI-102 (8-07)

# THE FOLLOWING VIOLATION CATEGORY SECTIONS ARE REQUIREMENTS OF THE LOS ANGELES COUNTY CODE, TITLE 11, OR THE CALIFORNIA HEALTH & SAFETY CODE

**INSECTS** - Eliminate insects (Cockroaches, Flies, Fleas, Etc.) and all evidence of insects by safe, legal and effective methods. Eliminate vermin harborage areas by sealing cracks and crevices in walls, cabinets, etc. (11.30.010)

**RODENTS** - Eliminate rodents through safe, legal and effective methods. Rodent-proof exterior and unit entry doors to eliminate gaps greater than 1/4". Seal all openings in walls, floors, ceilings, inside cabinets, and around gas and plumbing lines. Eliminate evidence of rodents. (11.30.010 & 11.30.50)

**WATER SUPPLY** - Provide adequate hot (110°F) and cold running water under pressure to all plumbing fixtures at all times. (11.20.190 & 11.20.280)

**PLUMBING** - Maintain all plumbing lines and plumbing fixtures free from defects. Properly repair or replace all loose, leaky, clogged or otherwise faulty plumbing lines. (11.20.190 & 11.20.340)

**STAIRS** - Repair/replace all loose, missing, or damaged balustrades, balusters, handrails, treads, or risers at stairways and stair landings. (11.20.340)

**WALLS** - Repair/replace all water damaged, broken, cracked, buckled, missing, peeling, blistered, or deteriorated walls, wall coverings (including areas within cabinets or behind drawers), and doors. (11.20.190 & 11.20.340)

**FLOORS** - Repair/replace all torn, deteriorated, worn, loose, damaged, cracked, uneven, or warped floors or floor coverings. (11.20.190 & 11.20.340)

**CEILINGS** - Repair/replace all water damaged, broken, cracked, missing, peeling, blistered, sagging, or deteriorated ceilings or ceiling coverings. (11.20.190 & 11.20.340)

**ELECTRICAL** - Repair/replace all damaged, defective, worn, or missing electrical wiring, outlets or switch plates. (11.20.190 & 11.20.340)

**POOL/SPA** - Maintain the swimming pool and area clean and in good repair. Provide required signs and safety equipment (CA H&S 116043).

**TOILETS** - Repair/replace all damaged, missing, cracked, broken, malfunctioning, or deteriorated toilets and their components (11.20.190)

**SINKS** - Repair/replace all damaged, missing, broken, malfunctioning, cracked or deteriorated sinks (including worn enamel) or sink fixtures. (11.20.190 & 11.20.340)

**BATH/SHOWERS** - Repair/replace all damaged, missing, broken, cracked, malfunctioning, or deteriorated baths/showers or their fixtures. (11.20.190)

**COMFORT HEAT** - Provide comfort heat (70°F) to all dwelling units in accordance with all local building requirement. Repair/replace any damaged, broken, malfunctioning, or deteriorated comfort heating units. (CA H&S 17920.3)

**APPLIANCES/FURNISHINGS** - Maintain all owner-furnished appliances and furnishings in good condition or repair. (11.20.340)

**OCCUPANCY** - Areas such as closets, pantries, toilets rooms, service rooms, garages, laundries, connecting corridors, unfinished attics, cellars and similar spaces are not allowed for human occupancy. (11.20.090)

**LIGHTING** - Repair/replace all damaged, malfunctioning, missing or deteriorated required lighting fixtures and their components. (11.20.340)

**WINDOWS/VENTILATION** - Repair/replace all damaged, broken, cracked, torn, inoperable, malfunctioning, missing, or deteriorated windows, ventilation units, window screens, or their components. Window screens shall be 16" mesh or smaller in tight fitting frames. (11.20.330 & 11.20.340)

**REFUSE AREA** - Store all garbage and refuse in appropriate containers with tight-fitting lids. Garbage shall not be kept for more than 7 days. Rubbish shall not be kept for more than 15 days. Maintain trash areas and containers clean and in good condition. (11.16.030 & 11.16.060)

**SANITATION** - Maintain the building, dwelling units, and the premises free from debris, rubbish, garbage and other offensive matter. All usable material, including wood, shall be stored above the ground not less than 18 inches to prevent rodent harborage. Animal, fowl and birds, other than cats, dogs, canaries and birds of the psittacine family, shall be kept at least 35 feet from any food establishment or dwelling and more than 100 feet from any school or hospital. (11.16.090 & 11.30.010)

**MAINTENANCE** - The building(s) and all units shall be maintained in good repair. (11.20.340)

**ROOF** - Repair/replace damaged, missing, or deteriorated roof or roof covering. (11.20.340)

**VENT SCREENS** - Provide corrosive-resistant wire mesh screens with openings no larger than 1/16 of one square inch in a tight-fitting frame to all foundation vent openings and all other openings in building to prevent the entry of vermin. (11.30.050)

**MISCELLANEOUS**

---

## CALIFORNIA STATE FRANCHISE TAX BOARD WARNING

Sections 17274 and 24436.5 of the State Revenue and Taxation Code provide, in part, that a taxpayer, who derives rental income from housing determined by the local regulatory agency to be substandard by reason of violation of state or local codes dealing with health, safety, or building, cannot deduct from state personal income tax and bank and corporation income tax, deductions for interest, depreciation or taxes attributable to such substandard structure where the substandard conditions are not corrected within six (6) months after notice of violation by the regulatory agency. THE DATE OF THIS NOTICE MARKS THE BEGINNING OF THAT SIX-MONTH PERIOD. The Department is required by law to notify the Franchise Tax Board of failure to comply with these code sections.

Please be advised that the above WARNING is for purpose of compliance with the State Revenue and Taxation Code only. Compliance with Health Laws as noted on the attached Inspection Report or Notice of Violation must be made within the time specified on the report or notice.

## LEAD CORRECTION ADVISORY

*WARNING:* You are hereby advised that corrections ordered by this report/official notice may disturb surfaces that may contain lead-based paint. Lead-based paint can be commonly found in housing built prior to 1978.

Prior to making any corrections ordered in conjunction with repairs or rehabilitation, you must determine if lead is present in the dwelling unit/apartment/room. All corrective actions must be conducted in a manner that will protect occupants, workers, and others from exposure to contamination from lead.

**For further information on lead hazards call 1(800) LA-4-LEAD.**

## OTHER INDOOR ENVIRONMENTAL HAZARDS

Exposure to internal environmental elements, such as asbestos, molds and mildew, dust mites, droppings from cockroaches and rodents, carbon monoxide, formaldehyde, pesticides, and radon also contribute to unhealthy housing environments. All corrective actions must be conducted in a manner that will protect occupants, workers, and others from exposure to these elements.

## REGISTRATION OF OWNERS OF SUBSTANDARD RESIDENTIAL PROPERTY

Within 10 days of recordation of notice of substandard conditions or similar document, the owner is required to comply with Section 17997 of the Health and Safety Code. The Board of Supervisors has designated the Department of Health Services, Environmental Division to maintain the information required by Section 17997.

02 ʔ 702  POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | | FOR COURT USE ONLY |
|---|---|---|

JONATHAN P. CYR                                    SBN: 260826
HANGER STEINBERG SHAPIRO & ASH, ALC
21031 VENTURA BLVD., SUITE 800 WOODLAND HILLS, CA 91364

TELEPHONE NO.: (818) 226-1222     FAX NO. *(Optional)*:   (818) 226-1215
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: :

LOS ANGELES COUNTY SUPERIOR COURT
STREET ADDRESS: 1725 MAIN ST.
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA MONICA, CA 90401
BRANCH NAME: SANTA MONICA WEST DISTRICT

**FOR COURT USE ONLY**

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

MAY 0 6 2013

John A. Clarke, Executive Officer/Clerk
By: Andre Williams, Deputy

*Dept. P*

PLAINTIFF/PETITIONER:  KRISTOPHER D. BAGLEY

DEFENDANT/RESPONDENT:  MILLER AND DESATNIK MANAGEMENT CO., INC.

CASE NUMBER:
SC120509

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: 023/702 |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒ Summons
   b. ☒ Complaint
   c. ☒ Alternative Dispute Resolution (ADR) package
   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☒ other *(specify documents)*: **Civil Case Cover Sheet Addendum and Statement of Location; Application and Order for Appointment of Guardian Ad Litem- Civil**
3. a. Party served *(specify name of party as shown on documents served)*:
   **MILLER AND DESATNIK MANAGEMENT CO., INC., A CALIFORNIA CORPORATION**

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   **BERNICE McCOMBIE - AUTHORIZED AGENT FOR SERVICE OF PROCESS**
4. Address where the party was served:  **3623 MOTOR AVE
   LOS ANGELES, CA 90034**
5. I served the party *(check proper box)*
   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:     (2) at *(time)*:
   b. ☒ **by substituted service.** On *(date)*: **04/29/2013** at *(time)*: **10:05 am** I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:
   **CITA GARCIA - PERSON IN CHARGE**
   Age: 30'S Weight: 150 Hair: BLACK Sex: Female Height: 5'2" Eyes: BROWN Race:

   (1) ☒ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date)*:     from *(city)*:     or ☒ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

44
Exhibit 1

| PETITIONER: KRISTOPHER D. BAGLEY | CASE NUMBER: |
|---|---|
| RESPONDENT: MILLER AND DESATNIK MANAGEMENT CO., INC. | SC120509 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☒ On behalf of *(specify):* **MILLER AND DESATNIK MANAGEMENT CO., INC., A CALIFORNIA CORPORATION**
    under the following Code of Civil Procedure section:

    ☒ 416.10 (corporation)           ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)      ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)  ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)    ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)             ☐ 415.46 (occupant)
                               ☐ other:

7. Person who served papers
    a. Name: **RYAN LUSTIG C/O REZAC-MEYER ATTORNEY SERVICE**
    b. Address: **1610 BEVERLY BLVD., SUITE 1  LOS ANGELES, CA 90026**
    c. Telephone number: **(213) 481-1770**
    d. The fee for service was: $ **50.00**
    e. I am:

        (1) ☐ not a registered California process server.
        (2) ☒ exempt from registration under Business and Professions Code section 22350(b).
        (3) ☒ registered California process server:
            (i) ☐ owner    ☐ employee    ☒ independent contractor.
            (ii) Registration No.: **6373**
            (iii) County: **LOS ANGELES**

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

    Date: **04/29/2013**
    **REZAC-MEYER ATTORNEY SERVICE**
    **1610 BEVERLY BLVD., SUITE 1**
    **LOS ANGELES, CA 90026**
    **(213) 481-1770**
    **www.rezacmeyer.com**

| **RYAN LUSTIG** | ▶ | *(SIGNATURE)* |
|---|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | | |

**PROOF OF SERVICE OF SUMMONS**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | | FOR COURT USE ONLY |
|---|---|---|
| JONATHAN P. CYR                                    SBN: 260826<br>HANGER STEINBERG SHAPIRO & ASH, ALC<br>21031 VENTURA BLVD., SUITE 800 WOODLAND HILLS, CA 91364<br><br>TELEPHONE NO.: (818) 226-1222      FAX NO.*(Optional)*:    (818) 226-1215<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: : | | |

| LOS ANGELES COUNTY SUPERIOR COURT | |
|---|---|
| STREET ADDRESS: 1725 MAIN ST.<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: SANTA MONICA, CA 90401<br>BRANCH NAME: SANTA MONICA WEST DISTRICT | |

| PLAINTIFF/PETITIONER: KRISTOPHER D. BAGLEY | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: MILLER AND DESATNIK MANAGEMENT CO., INC. | SC120509 |

| PROOF OF SERVICE BY MAIL | Ref. No. or File No.:<br>023/702 |
|---|---|

I am a citizen of the United States and employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1610 Beverly Blvd., Ste. 1, Los Angeles, CA 90026.

On April 29, 2013, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCIV.P 4(d)(1) was made, I mailed copies of the:

**Summons;Complaint;Alternative Dispute (ADR) package;Civil Case Cover Sheet (served in complex cases only);Civil Case Cover Sheet Addendum and Statement of Location; Application and Order for Appointment of Guardian Ad Litem- Civil**

to the defendant in said action by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at LOS ANGELES, California, addressed as follows:

> MILLER AND DESATNIK MANAGEMENT CO., INC., A CALIFORNIA CORPORATION
> ATTENTION: BERNICE McCOMBIE - AUTHORIZED AGENT FOR SERVICE OF PROCESS
> 3623 MOTOR AVE
> LOS ANGELES, CA 90034

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid at LOS ANGELES, California in the ordinary course of business.

Fee for Service: 50.00

Veronica Mancilla
Rezac-Meyer Attorney Service
1610 Beverly Blvd., Suite 103
Los Angeles, CA 90026
(213) 481-1770
Reg:

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on April 29, 2013.

Signature: _____

Veronica Mancilla

---

PROOF OF SERVICE BY MAIL

46

Exhibit 1

'mailproof

023/702

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| JONATHAN P. CYR        SBN: 260826<br>HANGER STEINBERG SHAPIRO & ASH, ALC<br>21031 VENTURA BLVD., SUITE 800 WOODLAND HILLS, CA 91364<br><br>TELEPHONE NO.: (818) 226-1222    FAX NO.*(Optional):* (818) 226-1215<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* : | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court Of California<br>County Of Los Angeles<br><br>**MAY 06 2013**<br><br>John A. Clarke, Executive Officer/Clerk<br>By: Andre Williams, Deputy |

| LOS ANGELES COUNTY SUPERIOR COURT<br>STREET ADDRESS: 1725 MAIN ST.<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: SANTA MONICA, CA 90401<br>BRANCH NAME: SANTA MONICA WEST DISTRICT | *Dept. P* |
|---|---|

| PLAINTIFF/PETITIONER: KRISTOPHER D. BAGLEY<br><br>DEFENDANT/RESPONDENT: MILLER AND DESATNIK MANAGEMENT CO., INC. | CASE NUMBER:<br>SC120509 |
|---|---|

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>023/702 |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   - a. ☒ Summons
   - b. ☒ Complaint
   - c. ☒ Alternative Dispute Resolution (ADR) package
   - d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   - e. ☐ Cross-complaint
   - f. ☒ other *(specify documents):* **Civil Case Cover Sheet Addendum and Statement of Location; Application and Order for Appointment of Guardian Ad Litem- Civil**
3. a. Party served *(specify name of party as shown on documents served):*
   **CHARLES A. DAILEY, AN INDIVIDUAL**
      **Age: 50'S Weight: 250 Hair: GRAY Sex: Male Height: 5'10" Eyes: BLUE Race: WHITE**

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served: **4504 JASMINE AVE<br>   CULVER CITY, CA 90232**
5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* 04/28/2013   (2) at *(time):* 09:10 am
   b. ☐ **by substituted service.** On *(date):*  at  *(time):*  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*

      *(1)* ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      *(2)* ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      *(3)* ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      *(4)* ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):*  from *(city):*      or ☐ a declaration of mailing is attached.

      *(5)* ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

FIL

47
Exhibit 1

| PETITIONER: KRISTOPHER D. BAGLEY | CASE NUMBER: |
|---|---|
| RESPONDENT: MILLER AND DESATNIK MANAGEMENT CO., INC. | SC120509 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

  (1) on *(date):*  (2) from *(city):*

  (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) *(Code Civ. Proc., § 415.30.)*

  (4) ☐ to an address outside California with return receipt requested. *(Code Civ. Proc., § 415.40.)*

d. ☐ **by other means** *(specify means of service and authorizing code section):*

  ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☒ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

|  |  |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
|  | ☐ other: |

7. **Person who served papers**
  a. Name: **RYAN LUSTIG C/O REZAC-MEYER ATTORNEY SERVICE**
  b. Address: **1610 BEVERLY BLVD., SUITE 1  LOS ANGELES, CA 90026**
  c. Telephone number: **(213) 481-1770**
  d. **The fee** for service was: **$ 50.00**
  e. I am:

    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☒ registered California process server:
      (i) ☐ **owner**  ☐ **employee**  ☒ **independent contractor.**
      (ii) Registration No.: **6373**
      (iii) County: **LOS ANGELES**

8. ☒ I **declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  or

9. ☐ I am a **California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: **04/30/2013**

**REZAC-MEYER ATTORNEY SERVICE**
**1610 BEVERLY BLVD., SUITE 1**
**LOS ANGELES, CA 90026**
**(213) 481-1770**
**www.rezacmeyer.com**

_____  ▶ _____
**RYAN LUSTIG**  (SIGNATURE)
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

48
Exhibit 1

023/702

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | |
|---|---|
| JONATHAN P. CYR | SBN: 260826 |
| HANGER STEINBERG SHAPIRO & ASH, ALC | |
| 21031 VENTURA BLVD., SUITE 800 WOODLAND HILLS, CA 91364 | |

TELEPHONE NO.: (818) 226-1222   FAX NO.(Optional): (818) 226-1215
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): :

LOS ANGELES COUNTY SUPERIOR COURT

STREET ADDRESS: 1725 MAIN ST.
MAILING ADDRESS:
CITY AND ZIP CODE: SANTA MONICA, CA 90401
BRANCH NAME: SANTA MONICA WEST DISTRICT

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

MAY 06 2013

John A. Clarke, Executive Officer/Clerk
By: Andre Williams, Deputy

*Dept. - P*

PLAINTIFF/PETITIONER: KRISTOPHER D. BAGLEY

DEFENDANT/RESPONDENT: MILLER AND DESATNIK MANAGEMENT CO., INC.

CASE NUMBER: SC120509

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: 023/702 |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒ Summons
   b. ☒ Complaint
   c. ☒ Alternative Dispute Resolution (ADR) package
   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ Cross-complaint
   f. ☒ other *(specify documents):* Civil Case Cover Sheet Addendum and Statement of Location; Application and Order for Appointment of Guardian Ad Litem- Civil

3. a. Party served *(specify name of party as shown on documents served):*
   CAROL P. DAILEY, AN INDIVIDUAL

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served: 4504 JASMINE AVE
   CULVER CITY, CA 90232

5. I served the party *(check proper box)*
   a. ☐ by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* (2) at *(time):*

   b. ☒ by substituted service. On *(date):* 04/28/2013 at *(time):* 09:10 am I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b):*
   CHARLES A. DAILEY - CO-RESIDENT
   **Age: 50'S Weight: 250 Hair: GRAY Sex: Male Height: 5'10" Eyes: BLUE Race: WHITE**

   (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him of her of the general nature of the papers.

   (2) ☒ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date):* from *(city):* or ☒ a declaration of mailing is attached.

   (5) ☒ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

PROOF OF SERVICE OF SUMMONS

Code of Civil Procedure, § 417.10
'97

Exhibit 1

| PETITIONER: KRISTOPHER D. BAGLEY | CASE NUMBER: |
|---|---|
| RESPONDENT: MILLER AND DESATNIK MANAGEMENT CO., INC. | SC120509 |

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1) on *(date):*       (2) from *(city):*

   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgment of Receipt.*) (Code Civ. Proc., § 415.30.)*

   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☒ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify):*
c. ☐ as occupant.
d. ☐ On behalf of *(specify):*
   under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a. Name:  RYAN LUSTIG C/O REZAC-MEYER ATTORNEY SERVICE
  b. Address:  1610 BEVERLY BLVD., SUITE 1  LOS ANGELES, CA 90026
  c. Telephone number: (213) 481-1770
  d. The fee for service was: $ 35.00
  e. I am:

    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☒ registered California process server:
      (i) ☐ owner  ☐ employee  ☒ independent contractor.
      (ii) Registration No.: 6373
      (iii) County:  LOS ANGELES

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal** and I certify that the foregoing is true and correct.

   Date: 04/30/2013
   **REZAC-MEYER ATTORNEY SERVICE**
   **1610 BEVERLY BLVD., SUITE 1**
   **LOS ANGELES, CA 90026**
   **(213) 481-1770**
   **www.rezacmeyer.com**

              RYAN LUSTIG ▶
      (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)            (SIGNATURE)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | | FOR COURT USE ONLY |
|---|---|---|
| JONATHAN P. CYR<br>HANGER STEINBERG SHAPIRO & ASH, ALC<br>21031 VENTURA BLVD., SUITE 800 WOODLAND HILLS, CA 91364     SBN: 260826 | | |
| TELEPHONE NO.: (818) 226-1222      FAX NO.*(Optional)*:  (818) 226-1215 | | |
| E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: : | | |

**LOS ANGELES COUNTY SUPERIOR COURT**

STREET ADDRESS: 1725 MAIN ST.

MAILING ADDRESS:

CITY AND ZIP CODE: SANTA MONICA, CA 90401

BRANCH NAME: SANTA MONICA WEST DISTRICT

| PLAINTIFF/PETITIONER:  KRISTOPHER D. BAGLEY | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  MILLER AND DESATNIK MANAGEMENT CO., INC. | SC120509 |

| DECLARATION OF DILIGENCE | Ref. No. or File No.:  023/702 |
|---|---|

I received the within process on April 24, 2013 and that after due and diligent effort I have been able to serve said person.  The following itemization of the dates and times of attempts details the efforts required to effect personal service.  Additional costs for diligence are recoverable under CCP §1033.5 (a)(4)(B).

Servee:   **CAROL P. DAILEY, AN INDIVIDUAL**

Documents:  **Summons;Complaint;Alternative Dispute (ADR) package;Civil Case Cover Sheet (served in complex cases only);Civil Case Cover Sheet Addendum and Statement of Location; Application and Order for Appointment of Guardian Ad Litem- Civil**

As enumerated below:

**04/24/2013 -- 07:45 pm**          4504 JASMINE AVE
                                    CULVER CITY, CA 90232

        NO ANSWER (RESIDENCE).

**04/25/2013 -- 07:05 am**          4504 JASMINE AVE
                                    CULVER CITY, CA 90232

        NO ANSWER (RESIDENCE).

**04/27/2013 -- 02:55 pm**          4504 JASMINE AVE
                                    CULVER CITY, CA 90232

        NO ANSWER (RESIDENCE).

**04/28/2013 -- 09:10 am**          4504 JASMINE AVE
                                    CULVER CITY, CA 90232

        SUBSTITUTED SERVICE. RECIPIENT INSTRUCTED TO DELIVER DOCUMENTS TO DEFENDANT AS NAMED.

Fee for Service: $  35.00
    County:  **LOS ANGELES**
    Registration No.:  6373
    **Rezac Meyer Attorney Service**
    **1610 Beverly Blvd., Ste. 1**
    **Los Angeles, CA 90026**
    **(213) 481-1770**
    **www.rezacmeyer.com**

I declare under penalty of perjury under the laws of the State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on April 30, 2013.

Signature: _____
                    RYAN LUSTIG

51
Exhibit 1

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address) | | FOR COURT USE ONLY |
|---|---|---|
| JONATHAN P. CYR                                        SBN: 260826 <br> HANGER STEINBERG SHAPIRO & ASH, ALC <br> 21031 VENTURA BLVD., SUITE 800 WOODLAND HILLS, CA 91364 <br><br> TELEPHONE NO.: (818) 226-1222         FAX NO.(Optional):   (818) 226-1215 <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): : | | |

LOS ANGELES COUNTY SUPERIOR COURT
   STREET ADDRESS: 1725 MAIN ST.
   MAILING ADDRESS:
   CITY AND ZIP CODE: SANTA MONICA, CA 90401
   BRANCH NAME: SANTA MONICA WEST DISTRICT

| PLAINTIFF/PETITIONER:  KRISTOPHER D. BAGLEY | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  MILLER AND DESATNIK MANAGEMENT CO., INC. | SC120509 |

| PROOF OF SERVICE BY MAIL | Ref. No. or File No.: <br> 023/702 |
|---|---|

I am a citizen of the United States and employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1610 Beverly Blvd., Ste. 1, Los Angeles, CA 90026.

On April 30, 2013, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCIV.P 4(d)(1) was made, I mailed copies of the:

      **Summons;Complaint;Alternative Dispute (ADR) package;Civil Case Cover Sheet (served in complex cases only);Civil Case Cover Sheet Addendum and Statement of Location; Application and Order for Appointment of Guardian Ad Litem- Civil**

to the defendant in said action by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at LOS ANGELES, California, addressed as follows:

      CAROL P. DAILEY, AN INDIVIDUAL

      4504 JASMINE AVE
      CULVER CITY, CA 90232

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid at LOS ANGELES, California in the ordinary course of business.

Fee for Service: 35.00

Veronica Mancilla
Rezac-Meyer Attorney Service
1610 Beverly Blvd., Suite 103
Los Angeles, CA 90026
(213) 481-1770
Reg:

I declare under penalty of perjury under the laws of the The State of California that the foregoing information contained in the return of service and statement of service fees is true and correct and that this declaration was executed on April 30, 2013.

Signature: _____
            Veronica Mancilla

**PROOF OF SERVICE BY MAIL**

Exhibit 1

ailproof

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Michael Fitzgerald and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV13- 3784 MWF (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** 312 N. Spring St., Rm. G-8 Los Angeles, CA 90012 | [ ] **Southern Division** 411 West Fourth St., Rm. 1-053 Santa Ana, CA 92701-4516 | [ ] **Eastern Division** 3470 Twelfth St., Rm. 134 Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| KRISTOPHER D. BAGLEY; KYLE L. BAGLEY; and KEIRA V. BAGLEY, a minor, by and through her Guardian ad Litem, Kyle L. Bagley | MILLER & DESATNIK MANAGEMENT CO., INC.; CHARLES A. DAILEY and CAROL P. DAILEY |
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) HANGER, STEINBERG, SHAPIRO & ASH Jonathan P. Cyr, Esq. 21031 Ventura Boulevard, Suite 800, Woodland Hills, California 91364 Tel: (818) 226-1222 | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) FIDONE & MOTOOKA, LLP Marjorie E. Motooka, Esq. 301 N. Lake Avenue, Suite 1000A, Pasadena, CA 91101 Tel: (626) 356-0100 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☒ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding
☒ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Plaintiffs assert a cause of action, among others, under Federal Fair Housing Act 42 U.S.C. 3604.

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☒ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

CV13- 3784

FOR OFFICE USE ONLY: Case Number: _____

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

| CV-71 (02/13) | CIVIL COVER SHEET | Page 1 of 2 |
|---|---|---|

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES**: Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES**: Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Mayu E MS_    DATE: _5-28-13_

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |